**TRI–PROFESSIONAL REALTY, INC., Appellant–Defendant,**

v.

**Tara HILLENBURG, Appellee–Plaintiff.**

No. 67A01–9512–CV–393.

Court of Appeals of Indiana.

Aug. 30, 1996.

---

James M. Houck, Greencastle, for appellant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Tri–Professional Realty, Inc. ("Tri–Professional") appeals from a judgment in favor of Tara Hillenburg ("Hillenburg"). Following a bench trial, the trial court entered its Findings of Fact, Conclusions of Law and Judgment on the ground that Tri–Professional had failed to exercise reasonable care in its representations to Hillenburg concerning the sale of real estate. Specifically, this action rests upon two dimensions of the same negligent act, Tri–Professional's misrepresentation (1) of the identity of the property offered for sale and (2) of its own authority to sell the property.

We affirm.

## ISSUES

Tri-Professional presents several issues for our review which we consolidate and restate as the following dispositive issues: [1]

1. Whether the court erred when it found that Tri–Professional owed a duty to Hillenburg.

2. Whether the trial court ordered an appropriate remedy.

## FACTS

Tri–Professional Realty is an Indiana corporation which operates a real estate business in Cloverdale. On or about August 13, 1990, Betty Jones Wood, a licensed real estate broker who was employed as a sales associate for Tri–Professional, observed a home-made "For Sale" sign on Lot # 8, Section Three, of the Ivanwald subdivision in Putnam County ("Front Lot"). In order to procure a listing on the property, Wood called the telephone number which appeared on the sign and reached Barbara J. Yeryar who agreed to list her property with Tri–Professional. The broker then placed a Tri–Professional "for-sale" sign on the Front Lot.

In fact, Yeryar owned a parcel of land in another section of the Ivanwald subdivision ("Back Lot"). The Front Lot was owned by Richard O. and Sharon R. Rosemeyer ("Rosemeyers") who lived in Indianapolis. None of the parties was aware that the sign had been placed on the wrong lot.

Hillenburg saw the Tri–Professional sign on the Front Lot and contacted Wood who met with Hillenburg at the property. After Wood and Hillenburg located survey markers on the Front Lot, they returned to the Tri–Professional office where Wood showed Hillenburg a plat and purported to locate the lot within the subdivision. On November 12, 1990, using the standard "Offer to Purchase Real Estate" form supplied by Tri–Professional, Hillenburg offered to purchase the property in a contract sale for $4,000.00, to be paid over four years with interest. The legal description in the written document properly identified Yeryar's property as the

Back Lot. Yeryar accepted Hillenburg's offer, but they did not meet personally. At all times, Hillenburg believed she was purchasing and Tri–Professional believed it was selling the Front Lot.

In April of 1991, Hillenburg began to clear the Front Lot for a building site. She and her husband removed several trees and built a tool shed. The Rosemeyers were unaware of these actions until the Fall of 1993 when they visited the Front Lot after which they confronted Hillenburg about her encroachment upon their property.

It was then that Hillenburg learned for the first time that she was not purchasing the Front Lot. Hillenburg filed suit against Tri–Professional. Her amended complaint stated the following counts: negligence, negligent formation of the contract, rescission of contract and breach of warranty. The Rosemeyers intervened against Hillenburg alleging a civil trespass. Pursuant to her attorney's advice, Hillenburg completed payments of principal, interest and taxes when they became due under the contract. She made the final payment to Yeryar after the Rosemeyers had filed their complaint, and before trial commenced she received a warranty deed and a policy of title insurance to the Back Lot.

The trial court entered its Findings of Fact, Conclusions of Law and Judgment on August 8, 1995. The court concluded that Hillenburg had committed a civil trespass and ordered her to pay the Rosemeyers $1,000.00. In its judgment, the court held that Hillenburg's cause of action sounded in negligence, specifically in negligent misrepresentation and justifiable reliance. The court ordered Tri–Professional Realty to pay Hillenburg the contract purchase price, plus interest, taxes and fees associated with the purchase of the Back Lot which totaled $4,994.25. Upon receipt of that amount, Hillenburg was ordered to deliver a warranty deed to Tri–Professional for the Back Lot. Tri–Professional now appeals.

---

1. We note that appellant's brief was single spaced throughout. Pursuant to Indiana Appellate Rule 8.2(A)(1), briefs presented to the Court of Appeals shall be double spaced except in the case of quoted material.

## DISCUSSION AND DECISION

### Standard of Review

■ Initially, we note that Hillenburg chose not to file an appellee's brief. Where the appellee fails to file a brief on appeal, we may reverse the decision of the trial court if the appellant establishes prima facie error. *Medical Specialists, Inc. v. Sleweon,* 652 N.E.2d 517, 522 n. 4 (Ind.Ct.App.1995), *trans. denied.* That rule protects this court and relieves it from the burden of controverting the arguments advanced for reversal, a duty which properly remains with the appellee. *See id.* However, the prima facie error rule is a rule of convenience, and we are not compelled to apply that standard but may, in our discretion, decide the case on the merits. *Id.* We choose to exercise our discretion and decide whether the trial court properly found in favor of Hillenburg.

■ In this case, Tri–Professional requested special findings pursuant to Indiana Trial Rule 52(A). Therefore, we apply a two-tier standard of review. First, we determine whether the evidence supports the findings and, second, whether the findings support the judgment. *OVRS Acquisition Corp. v. Community Health Serv., Inc.,* 657 N.E.2d 117, 123–24 (Ind.Ct.App.1995), *trans. denied.* The judgment will be reversed only when clearly erroneous, that is, when the judgment is unsupported by the findings of fact and conclusions of law. Ind. Trial Rule 52(A); *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* To determine whether the judgment is clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. *DeHaan,* 572 N.E.2d at 1320.

### Issue One: Duty

■ Tri–Professional contends that Hillenburg's negligence claim must fail because the essential element of duty is missing. Specifically, Tri–Professional asserts that as an agent of the seller, it owes no legal duty to a buyer in a real estate transaction.[2] We disagree.

■ A plaintiff must prove three elements in a negligence action: 1) a duty owed to the plaintiff; 2) a breach of that duty by the defendant; and 3) the breach proximately caused the plaintiff's damages. *Frye v. Trustees of Rumbletown Free Methodist Church,* 657 N.E.2d 745, 748 (Ind.Ct.App. 1995). As in any tort case, the determination of duty remains a question of law. *McAdams v. Dorothy Edwards Realtors, Inc.,* 604 N.E.2d 607, 611 (Ind.1992). However, whether the defendant breached that duty and whether that breach proximately caused the plaintiff's damages are generally questions to be decided by the trier of fact. *MacDonald v. Maxwell,* 655 N.E.2d 1249, 1251 (Ind.Ct.App.1995).

Both Tri–Professional and the dissent rely upon *McAdams,* 604 N.E.2d 607, for the proposition that a seller's agent in a real estate transaction owes no duty to a buyer. Such reliance is misplaced. In *McAdams,* our supreme court recognized that brokers are "a species of agent" and then stated:

> Unless otherwise agreed, an agent is subject to a duty to his *principal* to act solely for the benefit of his *principal.* We are unaware of any authority for the proposition that a seller's agent owes a buyer a duty to act in the buyer's best interest.

*Id.* at 611 (emphasis in original) (citations omitted). The court held that the seller's broker did not owe a *fiduciary* duty to the buyer, that is, a duty to act in the buyer's best interest. However, the court did not hold that a seller's agent owes no duty whatsoever to a buyer.

Here, Hillenburg's claim is not a claim for breach of a fiduciary duty but for Tri–Professional's misrepresentation of the identity of the property offered for sale and of its authority to sell the property. Tri–Professional purported to act on behalf of the owner of

---

2. This action accrued in 1993 when Hillenburg first learned that she had not purchased the Front Lot. *See Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 564 (Ind.1992). Therefore, we need not consider what effect, if any, Indiana Code §§ 25–34.1–10–10(c) and (d) enacted in 1994 would have on this case. Nevertheless, we doubt that the General Assembly intended these provisions to apply where, as here, an agent misrepresents its authority.

the Front Lot and represented to Hillenburg that it was authorized by the owner, as principal, to show and sell that property. While the dissent emphasizes that Tri–Professional represented Yeryar, neither Yeryar, the Rosemeyers nor any other principal had empowered Tri–Professional to sell the Front Lot.

■ The *Restatement* describes the duties owed by an agent to a third party:

> A person who purports to make a contract, conveyance or representation on behalf of another who has full capacity but whom he has no power to bind, thereby becomes subject to liability to the other party thereto upon an implied warranty of authority, unless he has manifested that he does not make such warranty or the other party knows that the agent is not so authorized.

RESTATEMENT (SECOND) OF AGENCY § 329, at 81 (1958). This rule applies although the agent reasonably believes that he is authorized to act. *Id.* cmt. b, at 82.

We find the *Restatement* persuasive where, as here, Tri–Professional did not represent and had no power to bind the owner of the Front Lot. We cannot agree with the dissent's assertion that imposing a duty on real estate agents to use reasonable care in representing their authority would, in effect, require that agents insure the title of all real estate they contract to sell. The issue in this case is not title but the agent's misrepresentation of the parcel offered for sale and of its authority to sell it.

Nor do we believe that our determination places a new requirement on Tri–Professional without the benefit of a warning. A real estate agent has a basic professional duty to identify correctly the property it claims authority to sell. The profession's own code of ethics and standards provides that realtors shall not offer for sale or advertise property without authority. *Code of Ethics and Standards of Practice of the National Association of Realtors*, Article 12, Standard of Practice 12–4. This standard anticipates the harm that can result when a real estate agent misrepresents its authority to sell a piece of property. *See generally Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 250 (Ind.1996) (duties are defined to a great extent by the foreseeability of relevant harms).

Tri–Professional further contends that the court's finding of a duty does not support its judgment. Specifically, Tri–Professional asserts that the court erroneously based its judgment upon negligent misrepresentation, a tort not generally recognized in Indiana. The judgment of the court reads in relevant part:

> This cause sounds in negligence, specifically in negligent misrepresentation and justifiable reliance. The undisputed evidence is that the defendant, Tri–Professional Realty, Inc., in the course of its business, supplied false information, which was relied upon by Plaintiff. [T]he Court finds that the Defendant failed to exercise reasonable care or competence in obtaining or communicating the correct information necessary to meet [its] professional responsibility.

Record at 111.

■ We must construe judgments in the same manner as contracts. *Patrick v. Patrick*, 517 N.E.2d 1234, 1236 (Ind.Ct.App. 1988). If a judgment is ambiguous, we determine its meaning by examining the entire judgment. *Id.* Particular words cannot be isolated from the judgment but must be considered as part of the whole. *Id.* We attempt to read the provisions of the judgment so as to render all provisions effective and not merely surplusage. *Id.* On appeal, we will sustain the trial court's interpretation if it is supported by the facts and law. *Id.*

The condition of Indiana law regarding the tort of negligent misrepresentation has been aptly described as one of "relative chaos." *See Trytko v. Hubbell, Inc.*, 28 F.3d 715, 721 (7th Cir.1994). Our court has stated that "a professional owes no duty to one with whom he has no contractual relationship unless the professional has actual knowledge that such third person will rely on his professional opinion." *Emmons v. Brown*, 600 N.E.2d 133, 135 (Ind.Ct.App.1992). To date, we have not recognized that a duty exists to support the tort of negligent misrepresentation outside the limited context of an employment relationship. *Trytko*, 28 F.3d at 720–21

(surveying case law). Here, however, the factual predicate for Hillenburg's negligence claim is not that Tri–Professional rendered a professional opinion, or failed to act in Hillenburg's best interest, but that it had no business, professional or other relationship with anyone vis-a-vis the Front Lot. Thus, in purporting to sell the Front Lot to Hillenburg, Tri–Professional did not render a professional opinion to a third person but simply misrepresented the entire transaction.

In this case, the complaint alleged negligence and the court specifically stated, "This cause sounds in negligence." Despite the court's subsequent use of the term "negligent misrepresentation," we believe its judgment was based on ordinary negligence. Considering the complaint and the facts of this case, we understand the court's use of the term "negligent misrepresentation" to describe the two related facets of Tri–Professional's negligent conduct, its misrepresentation that the Front Lot was offered for sale and that it was authorized to sell it. We need not consider the tort of negligent misrepresentation as the judgment is not necessarily based on that theory of recovery.[3] Even if the court's use of the term were erroneous, it would be harmless for the facts support the court's judgment of negligence.

The facts sustain a determination that Tri–Professional misrepresented both the identity of the property and its own authority to sell the property and, hence, that it breached its duty to Hillenburg and caused her to suffer damages. The evidence supports the trial court's findings, and the findings support its judgment of negligence. By its misrepresentation, Tri–Professional exposed Hillenburg to liability for trespass and, in the end, wholly failed to deliver to Hillenburg the benefit of her bargain. On these undisputed facts, Tri–Professional cannot be heard to complain that it owed Hillenburg no duty whatsoever or that it exercised reasonable care. The judgment of the trial court is not clearly erroneous.

### Issue Two: Damages

Tri–Professional also contends that the trial court did not fashion a proper remedy. The court specifically found that there was "little difference in value" between the Front Lot and the Back Lot. Thus, Tri–Professional maintains that Hillenburg did not suffer any damages to support her claim of negligence. We cannot agree.

■ Each piece of real estate is unique. *Unger v. Indiana & Michigan Elec. Co.*, 420 N.E.2d 1250, 1261 (Ind.Ct.App.1981). The "exact counterpart of any particular piece of real estate does not exist anywhere else in the world." *Bauermeister v. Sullivan*, 87 Ind.App. 628, 634, 160 N.E. 105, 107 (1928).

■ Here, Hillenburg bargained for the Front Lot which was flat and located in one part of the subdivision. She received the Back Lot which was hilly and situated in another area of the addition. Even if the monetary value of the two properties were the same, Hillenburg did not receive the benefit of her bargain. The trial court properly concluded that Hillenburg was entitled to damages.

3. The tort of negligent misrepresentation as embodied in the Restatement provides in part:
   (1) One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
   (2) Except as stated in Subsection (3) [one under public duty to give information], the liability stated in Subsection (1) is limited to loss suffered
     (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
     (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
   RESTATEMENT (SECOND) OF TORTS § 552, at 126–27 (1977). Our supreme court has not provided guidance in regard to the tort of negligent misrepresentation and this court has recognized a negligent misrepresentation theory of recovery only in narrow circumstances. *See, e.g., Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623 (Ind.Ct.App.1983); *see also Trytko v. Hubbell, Inc.*, 28 F.3d 715 (7th Cir.1994).

In the alternative, Tri–Professional argues that the trial court "tailored a remedy which is not available under the law." Brief of Appellant at 29. Specifically, the realty firm contends that Hillenburg should have pursued the equitable remedy of rescission for mutual mistake rather than a tort action against Tri–Professional. The dissent adopts this position, but we cannot agree for several reasons.

First, in this case there is an adequate remedy at law, and where the remedy at law is adequate, equity will not assume jurisdiction. *Jackson v. Farmers State Bank,* 481 N.E.2d 395, 408 (Ind.Ct.App.1985), *trans. denied.* Next, applications for rescission are addressed to the sound discretion of the trial court, *Hart v. Steel Prod., Inc.,* 666 N.E.2d 1270, 1275 (Ind.Ct.App.1996), and there has been no showing here that the trial court abused its discretion. Third, mutual mistake involves a mistake independently made by each party to the contract. *Fultz v. Cox,* 574 N.E.2d 956, 959 (Ind.Ct.App.1991). Yeryar was the only other party to the real estate contract[4] and was, therefore, a necessary party for a rescission, but neither Tri–Professional nor Hillenburg joined her in this action. Because Yeryar was not joined, rescission for mutual mistake was not an available remedy between the two parties who were before the court.

Finally, contrary to Tri–Professional's assertion, Hillenburg was not required to bring an action against Yeryar who could in turn seek damages from Tri–Professional. Rather, she could file suit directly against Tri–Professional and, in an action grounded in tort, recover her out of pocket losses suffered because of Tri–Professional's lack of authority. *See* REUSCHLEIN, HAROLD G. & WILLIAM A. GREGORY, AGENCY AND PARTNERSHIP 188 (1978).

The trial court ordered Tri–Professional to pay Hillenburg the principal, interest, taxes and fees involved in the purchase of the Back Lot and, upon such payment, Hillenburg was to convey title to the Back Lot to Tri–Professional. Hillenburg recovered the out-of-pocket expenditures she incurred in reliance upon Tri–Professional's representation of authority, but she would recover twice if she were to receive a money judgment and also retain title to the Back Lot.[5] Accordingly, it was proper for the court to direct Hillenburg, upon satisfaction of the money judgment, to deliver a deed to the Back Lot to Tri–Professional, which insofar as possible would restore Hillenburg to the position she had occupied before the failed transaction. A trial court has discretion to fashion a suitable remedy, and considering that Yeryar was not a party we can find no error in the remedy prescribed.

Affirmed.

DARDEN, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

Because I disagree with the majority's determination that Tri–Professional was not acting on behalf of a principal at the time it represented the identity of the property to be sold and, as a result, that Tri–Professional owed Hillenburg, as the buyer of real estate, a duty of care, I respectfully dissent.

The majority opinion fails to recognize the application of the well-settled law of agency to the instant case. Here, Tri–Professional undertook to sell property for Yeryar. Tri–Professional, therefore, was acting as an agent for Yeryar, the principal. *See Sutton v. Sanders,* 556 N.E.2d 1362 (Ind.Ct.App. 1990) (agency relationship consists of agreement of agent to act for or on behalf of principal). The scope of the authority given to Tri–Professional was to sell Yeryar's property, which Yeryar identified as the Front

---

4. Tri-Professional's lack of authority did not make it a party to the contract. *See* RESTATEMENT (SECOND) OF AGENCY § 329, at 81 cmt. a (1958).

5. Hillenburg did not recover the cost of the improvements she had made on the Front Lot, the damages she was ordered to pay in the civil

trespass claim and attorney's fees. Therefore, she was not placed in precisely the same position that she would have been if the breach had not occurred. However, Hillenburg did not cross-appeal, and whether she was entitled to recover those costs is not an issue before this court.

Lot. Thus, Tri–Professional was acting within the scope of its authority when it sold the Front Lot to Hillenburg. Tri–Professional, therefore, cannot be held individually liable for selling the Front Lot on the basis of Yeryar's misrepresentations. *See Clark v. Millikin Mortgage Co.*, 495 N.E.2d 544, 547 (Ind.Ct.App.1986) (principal is liable for acts of agent committed within scope of agent's actual or apparent authority).

Further, I reject the majority's use of the Restatement (Second) of Agency § 329 to find Tri–Professional individually liable in this case. This section applies to situations in which an agent warrants that he has the authority to bind the principal but, in fact, does not have such authority. In those situations, the agent can be held personally liable to the third party for his actions. *See e.g. Barnes v. Southwestern Bell Telephone, Co.*, 596 F.Supp. 1046, 1050 (W.D.Ark.1984) (agent of telephone company who contracted with third party for service and equipment at certain price could be personally liable if she contracted without authority); *Pete's Satire, Inc. v. Commercial Union Ins. Co.*, 698 P.2d 1388, 1390 (Colo.App.1985), *aff'd* 739 P.2d 239 (Colo.1987) (ins. agent who sold ins. coverage beyond his authority could be held personally liable for his actions). Here, Tri–Professional had the authority to procure a buyer for Yeryar. I do not believe this authority was altered by the fact that Yeryar misrepresented to Tri–Professional the location of the property she intended to sell.

My disagreement with the majority's determination that Tri–Professional was not acting on behalf of a principal compels me to also disagree with their finding that Tri–Professional owed a duty to Hillenburg to properly represent the property to be sold. Rather, I find persuasive the line of Indiana cases which holds that a real estate broker owes no duty to a buyer. *See McAdams v. Dorothy Edwards Realtors, Inc.*, 604 N.E.2d 607, 611 (Ind.1992). Such a duty is also not imposed, contrary to the majority's assertions, by the Realtors Code of Ethics and Standards, which provides that realtors may not offer property for sale without authority. By manipulating the law of agency and the Realtor's Code to place a duty on the agent here, the majority has effectively placed a requirement on real estate brokers that they insure the title of all real estate which they contract to sell. This added burden only serves to increase the expense associated with the purchase of real estate and is unsupported by Indiana law.

Additionally, I note that by holding Tri–Professional liable because it did not verify that Yeryar was the true owner of the Front Lot, the majority places a requirement on Tri–Professional without the benefit of warning or notice. If the majority intends to place such a requirement on real estate brokers, the requirement should not be applied retroactively, as is being done here.[6]

Contrary to the position of the majority, I believe that a mutual mistake of fact existed between the principal, agent and purchaser of the real estate. Specifically, both the buyer and the seller mistakenly believed that the sales transaction concerned lot 8, first addition, rather than lot 8, second addition. *See Showalter, Inc. v. Smith*, 629 N.E.2d 272 (Ind.Ct.App.1994), *trans. denied,* (where both parties share common assumption about vital fact upon which bargain is based, and assumption is false, transaction may be avoided if because of the mutual mistake a quite different exchange of values occurs from exchange contemplated by parties). As a result, I would find the appropriate remedy to be recision of the sales contract and I would remand to the trial court for a determination of any consequential damages suffered by Hillenburg.

---

6. I agree with the majority's determination that IND. CODE §§ 25–34.1–10–10(c) and (d), which define the duties and obligations of a broker, are inapplicable to this case because of the date the cause of action accrued. However, I disagree that, had they been applicable, the sections would not have granted Tri–Professional relief in the instant case. On the contrary, the legislature has specifically determined that a broker owes no duty or obligation to a buyer except the duty to treat the buyer honestly and the duty not to knowingly give the buyer false information. I.C. § 25–34.1–10–10(c). I find nothing in this section indicating that the legislature additionally intended to require brokers to insure the title to the real estate they are selling.