**Judith (Boschert) HOUCHENS,
Appellant–Respondent,**

**v.**

**Michael Terence BOSCHERT,
Appellee–Petitioner.**

No. 15A04–0011–CV–495.

Court of Appeals of Indiana.

Nov. 26, 2001.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, Indiana, Jerome J. Charls, Harrison, Ohio, Attorneys for Appellant.

Michael J. Hollenbeck, Lawrenceburg, Indiana, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Judith Houchens ("Wife") appeals the trial court's Supplemental Decree of Dissolution with respect to the valuation of her one-third interest in F.B.F. Limited, LLC ("F.B.F.") and the grant of one-half of her interest in F.B.F. to Michael Terence Boschert ("Husband"). Wife raises two issues on appeal, which we restate as:

I. Whether the trial court abused its discretion when it valued Wife's one-third interest in F.B.F.; and,

II. Whether the trial court abused its discretion when it awarded Husband one-half of Wife's interest in F.B.F.

We affirm.

### Facts and Procedural History

The facts most favorable to the judgment reveal that Wife and Husband's first marriage was from November 1988 to April 1995. They remarried in November 1995. Two months prior to their second marriage, in September 1995, Wife began working at Queen City Steel Treating Company ("Queen City Steel") as the Chief Financial Officer. The company had become unprofitable for the owners of Queen City Steel, the Stengers, due to high union labor costs, and in mid 1996, the Stengers gave Wife the opportunity to purchase the company name and lease its other main assets, such as the equipment and building.

On October 30, 1996, Wife and her two uncles, the heads of the engineering departments at U.C.L.A. and University of Maryland, formed F.B.F., an Ohio limited liability company. Thereafter, F.B.F. purchased the Queen City Steel name for twenty thousand dollars and began leasing its other assets. Wife and her two uncles each retained one-third interest, with Wife borrowing most of the money to purchase

her one-third interest from one of her uncles. Despite her lack of experience in the steel heat-treating industry, Wife ran Queen City Steel's operations with the assistance of the former owners: Ed Stenger, who was a salesman for the company, and his brother, Mike Stenger, who was in charge of floor operations. Husband worked primarily as a laborer at F.B.F. until he left the company in May 1997, shortly before filing for dissolution on May 19, 1997.

After F.B.F. took over Queen City Steel operations, Queen City Steel terminated its contract with the Teamsters' Union and made other management cutbacks. Queen City Steel became profitable within the next month. F.B.F. then proceeded to develop projects to attain quality certifications for Queen City Steel, which were approved in April and August of 1998. In all other respects, Queen City Steel maintained its previous operations.

On June 4, 1997, less than one month after Husband filed his petition for dissolution, Wife and her uncles, the two other owners of F.B.F., signed a post-dated operating agreement, effective October 30, 1996. The Operating Agreement restricts transfers of F.B.F. ownership by any of the three F.B.F. shareholders. Under the agreement, a majority of all non-selling owners must give written consent to any sale of an interest. If any owner dies or withdraws, his or her interest must be sold to the Company and the Company must purchase the interest. The purchase price for two years beginning as of the date of the Operating Agreement is the book value as determined by the Company accountant. After the initial two years, the purchase price is to be determined by the fair market value. R. at 708.

At trial, Wife's expert valued Wife's one-third interest in F.B.F. at $105,278 as of May 17, 1997, relying on the fact that the valuation date fell within the initial two-year period set forth in the Operating Agreement (October 30, 1996 to October 30, 1998). Husband's expert valued Wife's one-third interest in F.B.F. at $476,000 as of August 18, 1996. Husband's expert stated, "I don't think on a net basis that the value would be to [sic] much really different than what we came up with," if he had valued F.B.F. as of May 17, 1997. R. at 97. He reasoned that although the company performed better in 1998, F.B.F. would also have one more year less remaining on its lease term with the Stengers, thereby offsetting the better performance in 1998.

On September 1, 2000, the trial court issued its Supplemental Decree of Dissolution with Findings of Fact and Conclusions of Law, using May 19, 1997 (the date the petition for dissolution was filed), as the valuation date for F.B.F., and finding Wife's one-third interest in F.B.F. to be $476,000. The trial court awarded Husband one-half of that, or $238,000. Appellant's App. p. 48.

On September 27, 2000, Wife filed a Motion to Correct Errors, which was denied on October 19, 2000. Wife now appeals.

## Standard of Review

The trial court issued Findings of Fact and Conclusions of Law pursuant to Indiana Trial Rule 52. Upon review, this court "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52. This court will only disturb the trial court's judgment when there is no evidence supporting the findings or the findings do not support the judgment. *Yoon v. Yoon,* 711 N.E.2d 1265, 1268 (Ind.1999) (citing *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994)). We do not reweigh the

evidence, but rather, "we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment." *Id.* (citing *Chidester*, 631 N.E.2d at 910). We will affirm the trial court's judgment "unless the evidence points incontrovertibly to an opposite conclusion." *Scott v. Scott*, 668 N.E.2d 691, 695 (Ind.Ct.App.1996) (citation omitted).

## I. Valuation of F.B.F. Limited

Wife argues that the trial court improperly valued her interest in F.B.F. because it did not exclude her personal goodwill from F.B.F.'s value and because it did not give effect to the transfer restrictions in the Operating Agreement. Valuation of property in a dissolution action is within the broad discretion of the trial court, and we review such valuation for abuse of discretion. *Frazier v. Frazier*, 737 N.E.2d 1220, 1225 (Ind.Ct.App.2000) (citing *Reese v. Reese*, 671 N.E.2d 187, 191 (Ind.Ct.App.1996), *trans. denied*). There is no abuse of discretion where sufficient evidence and reasonable inferences support the trial court's decision. *Id.* (citation omitted).

### A. *Goodwill Valuation*

Wife argues that the trial court erred because it failed to exclude the value of her personal goodwill from F.B.F.'s value. Our supreme court has held that "before including the goodwill of a self-employed business or professional practice in a marital estate, a court must determine that the goodwill is attributable to the business as opposed to the owner as an individual." *Yoon*, 711 N.E.2d at 1269. "[T]o the extent a business or profession has goodwill ... it is a factual issue to what extent ... goodwill is personal to the owner or employee and to what extent it is enterprise goodwill and therefore divisible property." *Id.* at 1270.

At trial, Wife's expert did not differentiate between enterprise goodwill and personal goodwill, and failed to present distinct values for either. At one point, Wife's expert testified that the value of F.B.F. is "one hundred percent good will." R. at 438. While we realize that Wife could argue that her expert's testimony is that the valuation was one hundred percent *personal* goodwill, the expert failed to state so specifically. Moreover, such a claim of one hundred percent goodwill would be very unusual, and the trial court has the discretion to disregard such testimony.

Additionally, although Husband's expert testified about his valuation of F.B.F., Wife failed to question him about why his valuation did not exclude any amount for personal goodwill. Husband's expert did testify however, that in valuing F.B.F., he was not "concerned about the things [Wife] did to improve it's [sic] performance." R. at 253–54.

The trial court cannot be expected to exclude personal goodwill from the valuation of a business without any evidence of what would constitute the excludable personal goodwill aspects of the business or any evidence of the value of alleged personal goodwill. "The burden of proving the value of marital assets is, and should be, on the parties to the dissolution." *Dean v. Dean*, 439 N.E.2d 1378, 1383 (Ind. Ct.App.1982) (citing *In re Marriage of Church*, 424 N.E.2d 1078, 1080 (Ind.Ct. App.1981)). As Wife failed to submit any competent evidence of existence, proportion or value of personal goodwill, she failed to preserve this issue for appeal.

Wife nevertheless argues that three Indiana cases require that this case be remanded on the issue of excludable goodwill. Wife first relies on *Yoon*. The *Yoon* dissolution case holding, involving a medical practice, was centered upon the valua-

tion of goodwill, and the distinction between enterprise goodwill and personal goodwill, with respect to a "self-employed business or professional practice." *Yoon,* 711 N.E.2d at 1269. F.B.F., a closely held limited liability company, is not the type of self-employed business or professional practice contemplated by the *Yoon* court because Wife presented no evidence that F.B.F.'s valuations included "goodwill that depends on the continued presence of a particular individual," or personal goodwill. *Id.* (citing *Bressler v. Bressler,* 601 N.E.2d 392, 397 (Ind.Ct.App.1992)).

Wife also relies on *Bertholet v. Bertholet,* 725 N.E.2d 487 (Ind.Ct.App.2000) and *Frazier v. Frazier,* 737 N.E.2d 1220 (Ind. Ct.App.2000), for the proposition that the *Yoon* holding has been extended to require trial courts valuing assets in a dissolution to determine the value of goodwill of *any* type of business, not just self-employed businesses and professional practices. *Bertholet* involved the valuation of a bail bond business that the husband started prior to dating his future wife, that he later incorporated, and in which he retained a 100% interest. The trial court in *Bertholet* found that the "[h]usband's name has recognized value in the bail bond business and therefore has substantial value in and of itself which influences competition." *Bertholet,* 725 N.E.2d at 493. The *Bertholet* trial court though, failed to list any value for personal goodwill in its findings and failed to exclude such value from the value of the bail bond business. A panel of this court remanded the case "for a determination of the value of the business, excluding that amount of the business that is attributable to Husband's personal goodwill, if any." *Id.* at 497 (citing *Yoon,* 711 N.E.2d at 1265).

*Bertholet* is distinguishable however, because the bail bond business operated by Husband in that case was clearly the type of self-employed business with substantial name recognition value contemplated by *Yoon.* In our case, Wife became a one-third owner during the marriage and there is no evidence that Wife's name or personal association with Queen City Steel is recognized within the steel heat-treating industry in a manner that gives F.B.F. any advantage over competitors.

Wife also refers to the *Frazier* dissolution case holding involving the valuation of a furniture retail business owned and operated by the husband and wife. In *Frazier,* the parties' experts presented conflicting evidence about the husband's personal goodwill in the business and the effect of any alleged personal goodwill on the value of the business. The trial court accepted the significantly higher valuation that did not clearly distinguish between enterprise goodwill and personal goodwill, as opposed to the lower valuation of the expert that testified that the business had "very little goodwill without [the husband]." *Frazier,* 737 N.E.2d at 1225. Because of the conflicting evidence and the lack of specificity in the trial court's findings and conclusions with regard to personal goodwill, a panel of this court remanded the case.

Our case is distinguishable from *Frazier* because the parties in *Frazier* preserved their issue for review by presenting conflicting evidence at the trial court, whereas the parties in our case did not present competent evidence of distinct personal goodwill and its valuation to the trial court in order to preserve the issue for appeal. Because Wife failed to present competent evidence on the issue of personal goodwill, we find that the trial court did not abuse its discretion in its valuation decisions concerning alleged goodwill components of F.B.F.

### B. *Effect of the Operating Agreement*

■ Wife next argues that the trial court erred when it valued F.B.F. without

giving effect to the transfer restrictions in F.B.F.'s Operating Agreement, which was signed on June 4, 1997, after the petition for dissolution had been filed, but effective October 30, 1996. The Operating Agreement restricts transfers by any member of F.B.F.

The sale of units by a Member may take place only upon the written consent of the majority of the non-selling Members. If a Member dies or withdraws, the Member . . . shall sell and the Company shall purchase the units of the deceased or withdrawing Member. The purchase price in the case of death or withdrawal for the two year period beginning with the date of this Operating Agreement shall be the book value as determined by the Company's accountant. After the expiration of the initial two year period, the purchase price shall be the fair market value of the units. . . .

R. at 708. Wife's expert testified that the transfer restrictions "weighed quite heavily" in his valuation of F.B.F. R. at 292. However, Husband's expert testified that the transfer restrictions had a "minimal impact on the discounts that were taken and were applied" in his valuation report. R. at 226.

The trial court found "that the fair market value of F.B.F. Limited is more in line with the $476,000.00 figure give[n] by [Husband's] expert when considering all factors." R. at 48. To make its determination, the court considered the lack of company assets, the company's dependence upon its equipment leases, Wife's limited ability to sell her interest, and both Wife's and Husband's "contributions to the success or failure of the business." R. at 48–49. In its conclusions of law, the trial court specifically stated any profit sharing received by Wife after the date of valuation was not considered in determining F.B.F.'s value. R. at 49.

■ A valuation "submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determination in that regard." *Skinner v. Skinner*, 644 N.E.2d 141, 144 (Ind.Ct.App. 1994) (citations omitted). Additionally, we "will not reverse a judgment on the basis of conflicting evidence." *Ernst v. Ernst*, 503 N.E.2d 619, 621 (Ind.Ct.App.1987) (citation omitted). We therefore find that the trial court's determination that the value of Wife's one-third interest in F.B.F. was $476, 000, is not clearly erroneous.

## II. Award of One–Half of Wife's Interest in F.B.F. to Husband

■ Wife finally argues that the trial court abused its discretion when it awarded Husband one-half of Wife's interest in F.B.F. Wife argues that her interest in F.B.F. should not be split equally with Husband because their marriage was short term and Husband was merely an hourly employee at F.B.F., not a member of the management.

In Indiana there is a statutory presumption that an equal division of marital assets is just and reasonable. Ind.Code § 31–15–7–5 (1998) (*formerly* Ind.Code § 31–1–11.5–11). However, a party may rebut the presumption by presenting relevant evidence about: (1) each party's contribution to the acquisition of the property, income producing or not; (2) the extent that the property was acquired by either of the parties before the marriage, through inheritance, or by gift; (3) the economic circumstances of each of the parties at the time of the disposition of the property; (4) the spouses' conduct during the marriage with regard to the disposition or dissipation of their property; and, (5) the earning abilities of the spouses related to the divi-

sion of the property and the final determination of the parties' property rights. *Id.*

At trial, Wife never testified that the division should be anything but equal; and in fact, she testified that, "I think that the Court should split the value of F.B.F. Limited as of May 19, 1997 per the operating agreement that I am governed by." R. at 555. Wife never testified that she would disapprove of an equal split in the event the trial court did not adopt her expert's valuation. In fact, Wife presented no evidence to the trial court in an attempt to rebut the presumption of an equal division of F.B.F.

▉ In her brief, Wife relies on *Preston* when arguing that the short duration marriage (less than nineteen months) to Husband should play a significant role in the division of F.B.F. *In re Preston*, 704 N.E.2d 1093, 1099 (Ind.Ct.App.1999). The *Preston* case is similar to our case because both involve parties dissolving their second marriage to each other. Also, we agree with *Preston* in so far as it holds that "the court must consider only the evidence related to the marriage at issue, not to a previous marriage," *id.,* although no such error is alleged here. However, the *Preston* case involved the valuation and distribution of retirement plan benefits, rather than the valuation of an ongoing business. In *Preston*, the trial court used a coverture fraction formula, with the numerator of the formula based on the duration of the marriage. *Id.* There is no requirement that the valuation of a business in marriage dissolution be computed by using any set formula, especially a set formula that utilizes the duration of marriage as one integral part of the formula, and we decline to adopt such a rule here.

Wife also relies on the *Dahlin* case in support of her argument that awarding Husband half of her interest in F.B.F. is an abuse of discretion. *Dahlin v. Dahlin,* 397 N.E.2d 606 (Ind.Ct.App.1979). In *Dahlin,* our court found that where the husband entered the short term marriage and his net worth was substantially higher than the wife's, where the husband paid almost all of the financial obligations, and where the wife's contribution to the marriage was negligible, an award of nearly half of the marital estate was an abuse of discretion. *Id.* at 608. The court cited to the short duration of the marriage, the substantial net worth of husband as compared to wife at the outset of the marriage, the limited contributions of wife to the marriage, and the imminent retirement of the husband with a modest pension plan in less than two years of the dissolution decree, whereas the wife was thirteen years younger than the husband. *Id.*

Our case is similar to *Dahlin* in that both cases involve marriages of short duration. However, unlike *Dahlin,* Wife in our case does not argue that Husband entered the marriage with a substantially lower net worth than her. In fact, the growth in the net worth of the marital assets occurred during the marriage. In addition, Wife did not bring her interest in F.B.F. into the marriage; rather, it was created during the marriage.

Wife makes much of the fact that Husband was an hourly laborer at Queen City Steel during the marriage, not a part owner or a member of management, and then quit the job shortly before filing for dissolution. Such facts are irrelevant in an age that honors the marital relationship by valuing the contributions of spouses who do not even work outside of the parties' home. Wife does not claim that Husband dissipated the assets, was unsupportive, or failed to contribute at all to the marital assets, even in a non-income producing manner. The fact that Husband worked as an hourly employee during the management and ownership transition may even

be indicative of Husband's strong support of Wife's endeavors. Because Wife failed to present sufficient evidence to rebut the presumption of an equal division of marital assets in this case, we find that the trial court did not abuse its discretion in awarding Husband one-half of Wife's one-third interest in F.B.F.

### Conclusion

Because we conclude that the trial court did not abuse its discretion when it valued Wife's one-third interest in F.B.F. and awarded one-half of Wife's interest to Husband, the trial court's judgment is affirmed.

Affirmed.

DARDEN, J., and VAIDIK, J., concur.