Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 16 2013, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID W. STONE, IV**
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID ARNETT, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1208-DR-383 |
| | ) | |
| JULIA ARNETT, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Karen M. Love, Judge
Cause No. 32D03-1011-DR-231

**April 16, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, David Arnett, (Father), appeals the trial court's dissolution of his marriage to Appellee-Petitioner, Dr. Julia Arnett, (Mother), collectively, (Parents). We affirm.

## ISSUES

Father raises two issues on appeal, which we restate as follows:

1.      Whether the trial court abused its discretion when it ordered Father to attend and pay for counseling and a percentage of the court-appointed parenting coordinator's fees; and

2.      Whether the trial court abused its discretion in valuing Mother's business, the Arnett Eye Clinic.

## FACTS AND PROCEDURAL HISTORY

Mother and Father began dating in 1987, when Mother was seventeen years old and Father was twenty years old. Both parties moved to Bloomington after Mother graduated from high school so that Mother could continue her education at Indiana University. Although Father also enrolled at the university, he never earned a degree. The parties were married in May 1992 before Mother's college graduation. Shortly thereafter, Mother began optometry school while Father worked in a family business selling used cars. Their daughter, E.A., was born in April 1996, just as Mother was finishing her clinical rotations. In 1997, Mother opened Arnett Eye Clinic, where Father

was the business manager, on the west side of Indianapolis. The parties' second daughter, J.A., was born in January 2002.

Throughout the marriage, although Mother worked full-time at the eye clinic, Mother also had the primary responsibility for her daughters. She drove them to and from their extra-curricular activities and sports practices. She supervised their homework, took them on vacations, and attended church with them. Father, on the other hand, worked a maximum of ten hours per week doing clerical work at the clinic. He arrived at the clinic around 10:00 a.m., checked the mail, and reviewed bank statements before leaving for the day. Father did not attend the girls' activities.

Over the years, Father became increasingly critical of Mother and spoke to her in a hateful and intimidating tone. He also began checking Mother's cell phone and wallet. He required her to call him immediately when she left the clinic or when she went anywhere. He also questioned her about how she spent her money. Father eventually became physically violent with Mother when he grabbed the side of her head and head-butted her. When Mother learned that Father had given her a sexually transmitted disease, she filed a dissolution petition on November 5, 2010, and Father moved out of the family's residence.

At the time of the March 17, 2011 preliminary hearing, Father was living with his father on the south side of Indianapolis. He testified that he had taken the parties' Hummer and two motorcycles, a Harley Davidson and a Titan Gecko, when he left the family home. He explained that he refinanced the Hummer to decrease his loan payment

and paid off the loan on the Harley. He admitted that he not filled out any job applications, and explained that he was currently employed with his brother in the car-buying business. When asked, Father testified that he was familiar with the Guardian Ad Litem's (GAL) report, which recommended that he attend counseling. Father explained that he had already contacted a counselor and was "okay" with the counseling recommendation. (Transcript p. 150).

One year later, at a March 14, 2012 hearing, the parties agreed to adopt the GAL's Response to the Custody Evaluator's Recommendations, which included a recommendation that Father attend counseling. The Response also included a recommendation that a parenting coordinator should be appointed immediately. The parties were to contact the appointed parenting coordinator within seven days and schedule a meeting within 14 days. Father was ordered to pay 28.06 percent of the parenting coordinator's fees, which is equal to the percentage of Father's income derived from the Child Support Obligation Worksheet.

On July 17, 2012, the trial court held a final hearing on the dissolution petition. Testimony at the hearing revealed that Mother had been prompt and diligent in following the GAL's recommendations. Father, on the other hand, had failed to contact the parenting coordinator. Father had also failed to attend counseling. He explained that he was unable to pay for counseling because the counselor's fees included a $2000 retainer and a $245 per hour charge. According to Father, he "simply did not have the money available to begin that at the time." (Tr. p. 405). Father further testified that he had

4

recently taken the girls on a week-long vacation without telling Mother, and that he was currently buying and selling used cars. He asked the court to order each parent to pay one-half of their children's college expenses, and admitted that he had sold the Harley Davidson motorcycle for $8,000 in February 2011 and paid off the loan without telling Mother or the trial court. Father testified that he did not have any money left from the sale. Father agreed that the $600 per week estimate in the child support worksheet was an accurate reflection of the income he was able to make at that time. He asked the trial court to award him a $155,000 cash settlement in the dissolution order.

The testimony further revealed that Mother had not seen her daughter E.A. in over a year because E.A. had allegedly planted marijuana and Xanax in Mother's car and called the police to report there were drugs in Mother's car. The police stopped Mother's car and found the drugs but characterized the situation as "fishy" and no charges were filed. Fearing that a drug-related arrest could impact her license to practice optometry and jeopardize her livelihood, Mother chose not to have E.A. back in the house until she had attended counseling. Father, however, refused to comply with the trial court's order and take E.A. to counseling. Mother had regular visits with J.A. and took her to counseling appointments until six weeks before the dissolution hearing when Father refused to allow J.A. to visit Mother.

Financial documents admitted at trial revealed that the Parents' total personal assets had been appraised at approximately $258,000. Their debts, including a $5,917 withholding tax and a $2,136 corporate penalty tax on the eye clinic, were approximately

5

$272,000. The debts were over $14,000 more than the assets, and this figure did not include the $135,000 Mother owes in students loans. An appraiser valued the Arnett Eye Clinic at $39,925 based upon the fair market value of the equipment.

On July 24, 2012, the trial court issued a 23-page dissolution order. In relevant part, the trial court valued the Arnett Eye Clinic at $31,872, which is the $39,925 appraisal minus $5,917 in past due withholding taxes and a $2,136 corporate penalty tax. The trial court further found that Father is capable of earning a weekly gross income of $600. Although Father had asked for a $155,000 cash settlement, the trial court specifically denied this request because the parties' debts exceeded the parties' assets by $126,000 when Mother's student loans are included in the calculation.

The trial court also ordered Father to meet with and pay a counselor on the dates and times requested by the counselor for eighteen months. The trial court further ordered Father to contact Dr. John Ehrmann, the court-appointed parenting coordinator, within five days and to meet with him within ten days as previously ordered in March 2012.

Father now appeals. We will provide additional facts when necessary.

## DISCUSSION AND DECISION

At the outset, we note that Mother did not file an appellee's brief. Where the appellee fails to file a brief on appeal, we may reverse the decision of the trial court if the appellant establishes prima facie error. *Tri-Professional Realty, Inc. v. Hillenburg*, 669 N.E.2d 1064, 1067 (Ind. Ct. App. 1996), *trans. denied*. This rule protects this court and relieves it from the burden of controverting the arguments advanced for reversal, a duty

which properly remains with the appellee. *Id.* However, the *prima facie* error rule is a rule of convenience, and we are not compelled to apply that standard, but may, in our discretion, decide the case on the merits. *Id.* We choose to exercise our discretion in this case and determine whether the trial court properly found in favor of Mother. *See id.*

## I. *Payment for Counseling and Parent Coordinator Fee*

Father first argues that the trial court abused its discretion in ordering him to pay for counseling and a percentage of the parenting coordinator's fee because he cannot afford either one. We review a trial court's decision to order payment of expenses for an abuse of discretion. *See Hirsch v. Oliver*, 970 N.E.2d 651, 662 (Ind. 2012). Accordingly, we affirm the trial court unless the decision is against the logic and effect of the facts and circumstances before the trial court. *Id.*

Our review of the evidence reveals that Father agreed that he is able to make $600 per week. A few weeks prior to the hearing, Father took his daughters on a week-long vacation, and he asked the trial court to order each parent to pay one-half of their children's college expenses. Father seems to find money for the things he wants to do but not for the things he is ordered to do. Under these circumstances, the trial court did not abuse its discretion in ordering Father to pay for counseling and a percentage of the parenting coordinator's fee.

## II. *Valuation of Arnett Eye Clinic*

Father further argues that the trial court improperly valued Arnett Eye Clinic. The valuation of property in a dissolution action is within the broad discretion of the trial

court, and we review such valuation for an abuse of discretion. *Houchens v. Boschert*, 758 N.E.2d 585, 588 (Ind. Ct. App. 2001), *trans. denied*. There is no abuse of discretion where sufficient evidence and reasonable inferences support the trial court's decision. *Id.* The burden of proving the value of marital assets is on the parties. *Id.*

Here, an appraiser valued the Arnett Eye Clinic at $39,925 based upon the fair market value of the equipment. Mother's financial document revealed that Arnett Eye Clinic owed a $5,917 withholding tax and a $2,136 corporate penalty tax. The trial court subtracted the taxes owed from the appraised value of the clinic and valued the clinic at $31,872. Father did not object to the appraisal or tax liability or offer another appraisal at trial. Based upon the foregoing, the trial court did not abuse its discretion in valuing Arnett Eye Clinic.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in ordering Father to attend and pay for counseling and a percentage of the parent coordinator's fee, and valuing the Arnett Eye Clinic.

Affirmed.

BRADFORD, J. and BROWN, J. concur