**STAR WEALTH MANAGEMENT CO., as personal representative of the Estate of Kim Hester, deceased, Appellant,**

v.

**Lloyd BROWN d/b/a A.S.A.P. Investigation and Security Services also d/b/a A.S.A.P. Services, Appellee.**

No. 48A02–0303–CV–239.

Court of Appeals of Indiana.

Jan. 21, 2004.

William N. Riley, Mark K. Dudley, Young Riley Dudley & DeBrota, Indianapolis, IN, Attorneys for Appellant.

Arlene Rochlin, Law Offices, The Cincinnati Insurance Company, Indianapolis, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Star Wealth Management Co. ("Star"), as personal representative of the Estate of Kim Hester, appeals the trial court's grant of summary judgment to Lloyd Brown d/b/a A.S.A.P. Investigation and Security Services ("Brown") in its action against Brown alleging that he was negligent in providing security at The Courtyards Apartments ("Courtyards").

We affirm.

### ISSUE

Whether the trial court erred in granting Brown's motion for summary judgment.

### FACTS

In 1999 and 2000, Kim Hester lived with her 7 year-old daughter and her fiancé Jeff Phillips and their two young children at Courtyards in Anderson. On November 19, 2000, Lloyd Brown d/b/a A.S.A.P. ("Brown") contracted with Courtyards to provide security and address loitering concerns. Their agreement[1] was that on weeknights, Brown would "once an hour for approximately 15 minutes drive through the property, check the maintenance building and the laundry building and the office to make sure they were secure." (Star's App. 159 [designated deposition testimony of Brown]).

On Wednesday April 11, 2001, around 10:00 p.m., Hester told Phillips that some-

---

1. The agreement was apparently provided to the trial court, as it is cited in its rulings on Brown's and Courtyards' motions for summary judgment, but it was not presented to us as part of the appellate record.

one was sitting on his car in Courtyards' parking area. Phillips went outside and asked the man to not sit on the car; he agreed and then left the area. Another man, subsequently identified as Derrick Clark, then initiated an argument with Phillips. After some mutual name-calling, Phillips turned away and walked back into his apartment. Clark and several people with him walked away and into another Courtyards building.

Several minutes later, Phillips and Hester were sitting in their apartment bedroom by the front window. They observed a man wearing a hooded sweatshirt walk toward their apartment building and then stop and assume a shooting stance. There was a gunshot. Phillips saw a flash, dropped to the floor, and yelled to Hester to duck. Two more gunshots rang out. Hester was fatally shot. The shooter was Clark.

On November 6, 2002, Star, as personal representative of the estate of Hester, filed a complaint against Courtyards and Brown alleging that they had "failed to keep the premises reasonably safe for" Hester. (Star's App. 30).

On November 15, 2002, both Courtyards and Brown filed motions for summary judgment. Brown submitted designated evidence in support of his summary judgment motion.[2] Brown's counsel argued that given the limited nature of Brown's contractual obligations, the conduct of Clark was unforeseeable to Brown, thereby not imposing a duty on Brown to take

reasonable measures to prevent the shooting of Hester, and that Clark's action was the sole proximate cause of her death. Courtyards' motion was not provided to us, but it argued at the hearing on the motions that Clark's "sudden criminal intentional act" was the proximate cause of Hester's death and that no crimes of "sufficiently similar circumstances" had put it "on notice that we had a duty to exercise more reasonable care than we already were exercising." (Tr. 17).

Included in the materials designated by Star in opposition to Brown's motion was deposition testimony from Gregg O. McCrary.[3] In the designated deposition testimony, McCrary described a number of Courtyards tenant calls to the Anderson police from February of 2000 to early April of 2001. According to McCrary, Brown "should have known ... things" that "were going on" at Courtyards—even if those things had not been reported to the police or to Courtyards or to Brown. (Star's App. 172). McCrary opined that Brown "just didn't seem to know much about anything as far as the violence that was going on on the property or the potential for violence going on on the property." *Id.* at 173. McCrary concluded that Brown "had been negligent in performing [his] duties." *Id.* at 174. However, McCrary conceded in his testimony that he did not know any details about the actual contract between Brown and Courtyards and had "assumed" that Brown was required to be "on the premises nonstop." (Brown's App. 26).

---

2. In its appellate appendix, Star does not provide the evidence which Brown had submitted as designated evidence but merely Brown's listing of that which Brown had designated and "relied upon in support of his motion for summary judgment." Star's App. 77. Brown does provide this evidence in his appendix.

3. Star's brief in opposition to Brown's motion for summary judgment asserted that McCrary was "a former FBI agent," citing his deposition "Exhibit O." Star's App. 89. However, Star did not include in its appendix any evidence to that effect—simply four pages from McCrary's deposition testimony. *Id.* at 171–75. None of those pages explain McCrary's background.

According to Brown's deposition testimony, shortly before 10:00 that evening, he had left Courtyards to buy a soft drink; he then returned, parked his vehicle in front of the office, and began walking around the complex. During the next ten to fifteen minutes, he successfully dispersed three separate groups of people outside the Courtyards buildings and secured the laundry room. Brown stated that during his walk, he had seen no problems in the area of Phillips' car or the building where Clark and his associates had gone. Brown was in the Courtyards office, writing his report on the previous sweep, when he heard sirens responding to a call about Hester's shooting.

The trial court granted Brown's motion.[4] It applied the " 'totality of the circumstances' test to determine whether there is a duty of care to protect an invitee from a third person's criminal act," citing *Delta Tau Delta v. Johnson*, 712 N.E.2d 968 (Ind.1999); *L.W. v. Western Golf Ass'n*, 712 N.E.2d 983 (Ind.1999); and *Vernon v. Kroger*, 712 N.E.2d 976 (Ind.1999). (Star's App. 23). It noted the lack of evidence (1) that Brown had ever heard gunshots while patrolling Courtyards or had any gunshots reported to him; (2) that the criminal activity of which Brown was aware—vandalism, marijuana, loitering, noisiness—was such as to lead to a reasonably foreseeable walk-by murder; (3) that Courtyards had relayed to Brown any tenant complaints about security; (4) that Brown knew about the altercation between Phillips and Clark that preceded Hester's murder; or (5) that Brown knew about tenant calls to Anderson police over the fourteen months before Hester's murder. The court then concluded that given the "limited time shift and length of time he had been working

security" for Courtyards, the information known to Brown did not "make Clark's murder of Hester foreseeable to Brown," so as "to impose a duty on Brown to prevent it." (Star's App. 24). The trial court also found that Clark's act "was a willful, malicious, criminal act by a third party" and "an intervening cause which broke the cause of causation between Brown's alleged negligence and Hester's murder," and that "Brown's conduct was not a 'substantial factor' in bringing about the Hester shooting." *Id.* at 25.

In a separate ruling, the trial court denied Courtyards' motion for summary judgment. The trial court noted evidence of a series of circumstances at Courtyards that made "the criminal act that claimed Kim Hester's life ... reasonably foreseeable" to Courtyards so as to impose on it "a duty to take reasonable care to protect Kim Hester from criminal acts of a third party." (Star's App. 148.) It further found that by hiring Brown, Courtyards had "assumed the duty to provide security" and was thereby subject to potential liability for having done so negligently. *Id.* at 149.

### DECISION

Star appeals the trial court's grant of summary judgment to Brown, a ruling which was certified as a final and appealable one. Star acknowledges that as appellant, it has "the burden of demonstrating that the trial court erred." Star's Br. at 31. Star also acknowledges that in reviewing a ruling on summary judgment, "the Court applies the same standard as the Trial Court, i.e., summary judgment is appropriate when no designated material of fact [sic] exist and the moving party is entitled to judgment as a matter of law."

---

4. We appreciate the fact that in compliance with Ind. Appellate Rule 46(A)(10), Star provided the trial court's decision in its brief. However, the extremely small size to which its print was reduced makes the decision nearly unreadable.

Star's Br. at 31. However, Star's appendix[5] does not contain the evidence designated by Brown in support of his motion for summary judgment, although Brown's appendix does appear to contain his designated evidence. Moreover, as far as we are able to discern, Star's appendix also lacks any evidence designated by Courtyards in support of its motion for summary judgment.[6] Further, most of the evidence designated by Star in opposition to the summary judgment motions is not contained in the appellate record. Therefore, we must ask how Star would have us review the propriety of the trial court's summary judgment ruling without having the benefit of the materials considered by the trial court. With the caveat that our analysis is made without the benefit of substantial evidentiary material available to the trial court, we proceed to address Star's arguments.

As already noted, our review on a motion for summary judgment "is the same as it is for the trial court." *Catt v. Board of Comm'rs of Knox County*, 779 N.E.2d 1, 3 (Ind.2002). Specifically, we determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.* Summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

■ Star's action is one for negligence. To establish a negligence claim, the plaintiff must show (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach proximately caused the plaintiff's injury. *Delta Tau Delta*, 712 N.E.2d at 970–71.

Star argues that we should apply the "totality of circumstances test" of *Delta Tau Delta*, 712 N.E.2d at 974, for determining foreseeable criminal acts of a third party but that in applying the "concept of foreseeability" as to criminal acts of a third party, we should look to a number of cases "before *Delta Tau Delta.*" Star's Br. at 34. We disagree. We find, as did the trial court, that our supreme court provided the appropriate analytical framework in *Delta Tau Delta, Western Golf Ass'n,* and *Kroger.* We further cannot accept as dispositive the facts Star cites that were found by the trial court in its order denying Courtyards' motion for summary judgment—an order which is not a final one. *See Loving v. Ponderosa Systems, Inc.*, 479 N.E.2d 531, 535 (Ind.1985).[7]

■ Our supreme court in *Delta Tau Delta* engaged in an extensive analysis of various jurisprudential approaches on "the issue of whether a landowner owes a duty to take reasonable care to protect an invitee from the criminal acts of a third party." 712 N.E.2d at 973. It then held that the "totality of the circumstances test" should be applied in Indiana "to determine whether the crime in question was foreseeable." *Id.* The application of this test "requires landowners to take *reasonable* precautions to prevent *foreseeable* criminal acts against invitees." *Id.* (emphasis in original). "A substantial factor in the determination of duty is the number, nature,

---

5. The appendix lacks a Table of Contents. *See* Ind. Appellate Rule 50(A)(2).

6. Similarly, Star's memorandum of law opposing Courtyards' motion for summary judgment and its designation of material in that regard, *see* Star's App. 10(CCS), is not part of the record.

7. Brown argues that portions of the record cited by Star to support various factual assertions often do not evidence the fact asserted. We must agree. We caution counsel to honor the line between persuasive advocacy and distortion of the record.

and location of prior similar incidents, but the lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable." *Id.* And the analysis "incorporates the specific harm and prior incidents tests as factors to consider" when considering the question of duty. *Id.*

■ As to the facts in *Delta Tau Delta*, a woman was sexually assaulted by an alumni member of the fraternity during a party there, and she sued the fraternity. Applying the test "totality of the circumstances" test that it had adopted, evidence of two prior assault-like incidents and information about sexual assaults in the fraternity setting were held sufficient to find that Delta Tau Delta owed the woman a duty to take reasonable care to protect her from a reasonably foreseeable sexual assault. *Id.* at 974. Here, the specific harm was being shot by someone on the premises of Courtyards. As the trial court found, there was no evidence that there had ever been any violence toward tenants perpetrated by persons who had entered Courtyards' property. Nor was there any evidence that the shooting of a tenant should have been reasonably foreseeable to Brown.

In *Kroger*, the plaintiff was injured by an escaping shoplifter on the parking lot outside the store. The plaintiff submitted evidence of frequent shoplifting and physical confrontations with escaping shoplifters, plus frequent police runs to Kroger's premises. This was held to show a reasonable foreseeability to Kroger "that a shopper might be injured by crime while shopping in or around the Kroger store" and was "sufficient to hold that duty exist[ed]" for Kroger to take reasonable care to protect its shoppers. 712 N.E.2d at 980. Here, the evidence before us indicates that Brown was employed in a limited capacity

to deal with loiterers, but there was no evidence that loiterers had ever posed a danger to tenants. Further evidence indicated that Brown had dealt with loiterers, and had done so on three instances that night, but that his actions in dispersing loiterers had provoked no violence. Finally, there was no evidence that it would be reasonably foreseeable for an unnoticed loiterer to leave the common area and then reemerge to fire a shot into an apartment.

In *Western Golf*, a student was in co-ed housing while participating in an event, and another participant raped her. She alleged that the event sponsor, as owner of the housing, had breached its "duty to provide for a safe living environment." 712 N.E.2d at 984. Applying the analysis of *Delta Tau Delta*, the court held that evidence of isolated childish pranks and actions in a college co-ed living facility were "deplorable" but not sufficient "to make a rape reasonably foreseeable." *Id.* at 985. Thus, the sponsor had no duty to take reasonable care to protect the student from the other student's criminal act. *Id.* The facts here do indicate that Brown was aware of some arguably deplorable conditions—such as marijuana smoking, noisy tenants, trash, and vandalism. However, we do not find that these facts made it reasonably foreseeable to Brown that someone would shoot a tenant.

Applying the totality of the circumstances test pursuant to our supreme court's analysis and its application, we agree that the evidence presented to us does not show that the shooting of Hester was a reasonably foreseeable act such that Brown had a duty to protect Hester from that act. Having determined that the trial court did not err in granting summary judgment to Brown on the basis of his not having a duty to protect Hester, one of the necessary elements to establish a negligence claim, *see Delta Tau Delta*, 712

N.E.2d at 970–71, we need not reach Star's argument that the trial court erred in granting summary judgment for a failure to show proximate cause.

■ Star also contends that the grant of summary judgment to Brown must be reversed because it conflicts with the order denying summary judgment to Courtyards and "it is impossible that the same facts would give rise to foreseeability for one defendant and not the other." Star's Br. at 41. However, as already noted, we have scarcely any evidentiary material as to Courtyards' motion. Further, as already noted, the trial court's order in that regard is not a final one. *See Loving,* 479 N.E.2d at 535. Moreover, it has long been the law that "a trial court has inherent power to reconsider, vacate, or modify any previous order so long as the case has not proceeded to final judgment." *Haskell v. Peterson Pontiac GMC Trucks,* 609 N.E.2d 1160, 1163 (Ind.Ct.App.1993). Therefore, this argument must fail.

Finally, Star argues that Brown "failed to exercise reasonable care in the undertaking of his responsibility to provide security." Star's Br. at 42.[8] Star cites decisions from several jurisdictions that have held that a security company "may be liable to third parties for losses caused by failure to perform their duties." Star's Br. at 45. Further, in its reply Star cites *King v. Northeast Security, Inc.,* 790 N.E.2d 474 (Ind.2003), issued two weeks after Star had filed its initial brief, for the proposition that "security companies under contract have a duty to persons properly on a premises." Reply at 1.

For several reasons we do not find *King* to compel reversal in this case. First, *King* took place in a school setting. In *King,* the plaintiff was beaten on the grounds of a public high school; he sued Northeast, the security company hired by the school, as well as the school district. In its discussion of the negligence claims against the district and against Northeast, our supreme began by citing the long-standing recognition that school authorities owe a duty to exercise reasonable care and supervision for the safety of the children under their control. 790 N.E.2d at 484. Therefore, the subsequent discussion of Northeast's duty was arguably linked to the duty of the school with which it had contracted.

Second, the initial summary of the court's holding was that "a security service employed by a school district may be liable for negligence in carrying out its *contractually* assumed obligations." 790 N.E.2d at 477 (emphasis added). Further, the entire discussion of Northeast's duty is permeated with references to the contract between it and the school. A section of the contract is quoted in the initial facts of the case, and specific phrases are quoted in the analysis. However, here, the evidence presented by Star on appeal does not include the contract between Courtyards and Brown. Although *King*'s statements that it "think[s] it is clear that the purpose of the agreement was to provide security services for the school," and "think[s] it equally plain that the agreement was to protect all members of the public, including students, who were on the property," may be read as inferences, the inferences

---

8. Star did not argue such in its opposition to Brown's motion for summary judgment. Rather, Star argued to the trial court that Brown "failed to take reasonable precautions to prevent foreseeable criminal acts" against Hester, citing *Delta Tau Delta,* and that Brown "assumed a duty" to protect Hester from criminal acts of third parties because Courtyards "had undertaken to provide security to Kim Hester against criminal activity of non-residents by providing security services through Brown." (Brown's App. 107, 105, 106).

were based upon the language of the contract. *Id.* at 485. Having no contract before us to consider, we can make no such inferences.

Finally, as a third distinction, in *King* the contract provided for a continuous presence by Northeast outside the school from 7:00 a.m. until 3:30 p.m., and the evidence indicated that the Northeast employee who had been posted at the location where King was attacked was inside making a personal telephone call when King was attacked at a little after 3:00 p.m. Here, the only information we have about the contract between Brown and Courtyards is that it required Brown to be on the premises for fifteen minutes of each hour during the evening of the shooting. The facts here do not indicate that Brown was not present at Courtyards as required by the contract.

Based upon the foregoing consideration of the evidence before us in this case, we do not find that *King* requires us to reverse the summary judgment granted to Brown.

We affirm.

MAY, J., and BARNES, J., concur.