**Deann THOMAS, Appellant–Plaintiff,**

v.

**LEWIS ENGINEERING, INC., Appellee–Defendant.**

**No. 32A01–0509–CV–400.**

Court of Appeals of Indiana.

June 7, 2006.

William O. Harrington, Scott C. Quick, William O. Harrington, P.C., Danville, IN, Attorneys for Appellant.

Richard A. Young, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

NAJAM, Judge.

**STATEMENT OF THE CASE**

Deann Thomas appeals from the trial court's grant of summary judgment in fa-

---

vor of Lewis Engineering, Inc. ("Lewis") and from the denial of Thomas' cross-motion for summary judgment on her complaint alleging negligent misrepresentation. Thomas presents a single issue for review, namely, whether the trial court erred when it entered summary judgment in favor of Lewis.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In May 2002, Eric Owens marked with a string what he believed to be the western boundary of his property in Hendricks County, where he intended to build a fence. Thomas, the adjacent property owner west of Owens' property, informed Owens that the marked line was on Thomas' property. According to the findings of fact made by the trial court in the underlying quiet title suit, "Owens hired Lewis for the purpose of locating Owens' west boundary line when Owens was considering the construction of [his] fence." Appellant's App. at 85. Despite Thomas' protest, Owens built the fence along the boundary he had marked. In October 2002, Lewis prepared a retracement survey of Owens' parcel. Lewis then provided a copy to Owens. The survey indicated that the location of the proposed fence was not on Thomas' property.

In December 2002, Owens filed suit against Thomas "related to the placement of the fence and the ownership and location of the property line separating their [respective] parcels." Appellant's App. at 28. Thomas counterclaimed to quiet title and alleged trespass. After a bench trial in that case, the trial court entered judgment against Owens and in favor of Thomas on Owens' second amended complaint and on Thomas' counterclaim.

In August 2004, Thomas filed her complaint against Lewis, alleging negligent misrepresentation with regard to the retracement survey performed for Owens and seeking to recover the fees and costs Thomas spent to defend against Owens' suit and to prosecute her counterclaim. Lewis filed a motion for summary judgment, and Thomas filed a response and counter motion for partial summary judgment. After a hearing on both motions, the trial court granted Lewis' motion and denied Thomas' counter motion. Thomas appealed.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Star Wealth Mgmt. Co. v. Brown*, 801 N.E.2d 768, 772 (Ind.Ct.App.2004). Specifically, we determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Vaughn v. Daniels Co. (WV)*, 841 N.E.2d 1133, 1138 (Ind.2006). Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000).

### Negligent Misrepresentation

Thomas contends that the trial court erred when it granted Lewis' motion for summary judgment on her negligent misrepresentation claim. Specifically, Thomas

alleges that "Lewis owed Thomas a duty, as a matter of law, to perform its work for Owens in a professional, non-negligent manner, and thereby not cause her to expend time, energy, and money to defend her property from a lawsuit based on Lewis's negligent and deficient work-product." Appellant's Brief at 21. We cannot agree.

The tort of negligent misrepresentation, as embodied in the Restatement (Second) of Torts, provides in part:

(1) One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552 (1977).

Indiana has not adopted Restatement Section 552 without limitation. Indeed, the condition of Indiana law regarding the tort of negligent misrepresentation has been aptly described as one of "relative chaos." *Tri–Professional Realty, Inc. v. Hillenburg*, 669 N.E.2d 1064, 1068 (Ind.Ct. App.1996) (quoting *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 721 (7th Cir.1994)), *trans. denied*. But it is clear that to date Indiana has not recognized that a duty exists to support the tort outside the limited context of an employment relationship. *See Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623 (Ind.Ct.App.1983); *Tri–Professional*, 669 N.E.2d at 1068. Instead, we have held that a professional owes no duty to one with whom he has no contractual relationship unless the professional has actual knowledge that such third person will rely on his professional opinion. *Id.*

In *Essex v. Ryan*, 446 N.E.2d 368 (Ind. Ct.App.1983), this court addressed duty in the context of a homebuyer's negligent misrepresentation action against a surveyor who had incorrectly marked the property's boundary for the prior owner. We specifically rejected the adoption of Restatement Section 552 and held that the surveyor owed no duty to the home buyers because he had no knowledge they would rely on his survey performed for the prior owner and because he was not in privity with them. *Id.* at 371, 373.

In considering the privity exception, the court in *Essex* recognized the difference between "*knowledge* that a third party will rely on the opinion given and an *expectation* that unidentified others might rely on it." *Essex* 446 N.E.2d at 372 (emphasis in original). Mere foreseeability is not enough. Instead, the actual knowledge exception to the privity rule has been applied only where there has been contact between the professional and the third party. *See Brown v. Sims*, 22 Ind.App. 317, 53 N.E. 779 (1899) (holding that abstractor hired by buyer was liable to buyer's lender

where abstractor personally assured lender that lender could rely on the title being free of any defect or lien); *Ohmart v. Citizens Sav. & Trust Co.,* 82 Ind.App. 219, 145 N.E. 577 (1924) (holding that savings and loan that neglected to include judgment liens in abstract of title prepared for seller was not liable to purchaser, who was not dealing with seller or savings and trust company at the time the abstract was prepared).

The court in *Essex* acknowledged that its holding was limited to the particular facts, namely, a surveyor's liability to unknown third parties. *Id.* at 373. But the reasoning in that case applies equally to the facts in this case. Here, Thomas had no contractual relationship with Lewis. Thus, in the context of Thomas' negligent misrepresentation claim, Lewis did not owe a duty to Thomas unless Lewis actually knew that Thomas would rely on Lewis' survey.

Thomas noted that the marking of Owens' western property line necessarily marked the eastern boundary of Thomas' property. And the adjacent property owner's identity was easily ascertainable by searching public records. But absent privity, the rule applied in *Essex* and *Tri–Professional* requires the professional not merely know or be able to readily ascertain the identity of the third party but that the professional have actual knowledge that the third party will rely on its opinion or services. There is no evidence that Lewis knew that Thomas would actually rely on Lewis' survey.

Thomas attempts to create a duty based on the recipe set out in *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991). There, the supreme court required the balancing of three factors before a court may impose a duty. *Id.* at 995. The three factors are: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Id.* But the court in *Webb* used that formula to determine duty in the context of an ordinary negligence claim. Here, Thomas alleged negligent misrepresentation, not negligence.

Even if we were to apply *Webb* in determining a duty, Thomas' claim would still fall short. Regarding the first factor, there is no evidence that Thomas had a relationship or even any contact with Lewis. And as to the third factor, public policy concerns weigh against creating a duty here. This court stated in *Essex* that it "[was] not convinced that the economic benefits accruing to consumer plaintiffs would outweigh the hazards of potential liability which abolition of the privity requirement would impose upon providers of professional opinions." *Essex,* 446 N.E.2d at 373. The court quoted Justice Cardozo's opinion in *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931), when he stated:

> If liability for negligence exists, a thoughtless slip or blunder .... may expose [professionals] to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may exist in the implication of a duty that exposes to these consequences.

*Essex,* 446 N.E.2d at 373 (citation omitted) (alterations in original). The *Essex* court then noted further that

> Justice Cardozo's caution is particularly relevant today given the increasing litigiousness of our society and the rising cost of malpractice insurance. Section 552 does not, in our view, sufficiently guard against imposing unwieldy duties upon providers of professional opinions.... We believe the privity requirement, subject to an actual knowledge

exception, properly balances the competing interests of consumer and professional in a cause such as the one before us.

*Id.*

We agree that the privity requirement, with the actual knowledge exception, adequately balances the interests of consumers and professionals. Thomas asks us to find that a professional owes a duty to every unknown third party impacted by that professional's work. But as we recognized in *Essex*, such a holding would open the floodgates of litigation. *See id.* Expanding the scope of a professional's liability may aid some consumers but would likely result in an increase in costs for professional services for all consumers. And consumers of other professional services would undoubtedly attempt to apply any expansion of the rule on these facts to claims against professionals other than surveyors as well.

The second factor, the foreseeability of the harm to an adjacent property owner, weighs in favor of Thomas on these facts. As noted above, the location of Owens' boundary necessarily located the boundary of the adjacent property as well, and Thomas' identity as the adjacent property owner was easily ascertainable from public records. But the lack of a relationship between the consumer and a professional and the public policy interests weigh strongly in favor of not finding a duty on these facts. After balancing the interests of consumers and professionals, we conclude that the rule applied in *Essex* is a sound rule that should be maintained, namely, that a professional owes a duty to a third party outside of a contractual relationship only if the professional has actual knowledge that the third party will rely on the professional's opinion or service.

### Conclusion

We conclude that the duty rule applied in *Essex* is the correct one to apply in negligent misrepresentation cases. Specifically, a professional owes no duty to one with whom it has not contracted unless the professional has actual knowledge that the third party would rely on the professional's opinion or service. Because Thomas had no relationship with Lewis, she had no right to rely on its survey. And, in fact, Thomas did not rely on Lewis' survey. Instead, she argued that the survey was inaccurate when she defended against Owens' suit and filed her own counter suit. In sum, Thomas has shown neither a duty arising from a relationship with Lewis nor a duty arising from Lewis' actual knowledge that Thomas would rely on its survey. Thus, Thomas has failed to state a valid claim under Indiana law.[1] As such, the trial court did not err when it granted summary judgment in favor of Lewis on Thomas' negligent misrepresentation claim.

Affirmed.

SHARPNACK, J., and ROBB, J., concur.

---

1.  Because we determine that Lewis did not owe a duty to Thomas, we need not address Thomas' argument that Lewis' breach of administrative regulations setting professional standards for surveyors supports her claim of negligent misrepresentation. Also, because our determination on the issue of duty disposes of this case, we do not address Thomas' argument regarding the reliance element of negligent misrepresentation. But if we were to address the issue of reliance, we would find, as noted above, that Thomas has failed to demonstrate either a right to rely or that she actually relied on Lewis' survey.