**In re the Marriage of Mahendra SINGH, Appellant–Petitioner,**

v.

**Rashmi SINGH, Appellee–Respondent,**

and

**State of Indiana, Appellee–Intervenor.**

No. 53A01–0501–CV–40.

Court of Appeals of Indiana.

March 27, 2006.

Suzette V. Sims, Holly M. Harvey, Bunger & Robertson, Bloomington, for Appellant.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Mahendra Singh ("Husband") appeals the trial court's denial of his motion for relief. He raises three issues, of which we find one dispositive: whether the trial court correctly interpreted an agreed entry that resolved spousal support issues following the dissolution of Husband's

marriage to Rashmi Singh ("Wife"). On cross-appeal, the State asserts the trial court did not have jurisdiction to address Husband's motion for relief.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were divorced on November 8, 1995. The dissolution decree gave Wife custody of the children, provided for Husband's visitation with the children, and ordered Husband to pay child support, buy Wife a car, and pay all outstanding debt they had assumed jointly or in his name. In addition, the decree provided:

> Husband shall, in addition to the childcare expense which is figured in the support amount, pay wife's tuition and books for the remainder of her course of study at Ivy Tech to obtain an Associate's degree, including any amounts borrowed to date for such purposes, as rehabilitative maintenance, for a period not to exceed three years from the date of this decree. Husband shall not be responsible for further cash maintenance payments in light of the long period of time this matter was in litigation and the payments he has been making in the interim. Wife shall be responsible for her living expenses.

(Appellant's App. at 25.)

At some point thereafter, Wife filed a petition for rule to show cause. The parties entered an "Agreed Entry and Judgment," which was approved and incorporated into the dissolution decree on October 31, 2000. (*Id.* at 27–29.) The Agreed Entry provided:

1. [Wife] filed a Verified Petition for Rule to Show Cause. In this Petition it was alleged that [Husband] failed and refused to obey the Provisional Order and Decree of Marital Dissolution by not paying for tuition and books as maintenance, or his percentage of uninsured medical expenses, or purchasing a vehicle as maintenance, and is now in $9929.70 in arrears on said payments all owed to [Wife]. By endorsement and filing of this Agreement, [Wife] vacates, waives, and dismisses the currently filed Verified Petition for Rule to Show Cause.

2. [Wife] also filed a Notice of Intent to Move from the state of Indiana to the state of California.

3. [Husband] herein agrees to pay [Wife] through the Monroe County Clerk's Office the amount of $100.00 per month beginning on or before the first day of each month beginning October of 2000 and continuing every month thereafter for forty-eight (48) months until the sum of $4,800 is paid in full; which payment is in partial satisfaction of the debt for maintenance owed by [Husband] to [Wife].

4. [Husband] also agrees to pay for [Wife]'s student loans as required by the Decree of Marital Dissolution in the approximate sum of $4752.16 as of November 17, 1997; which loans are owed to USA Group Loan Services, Inc. [Wife] agrees to supply [Husband] with the student loan coupon book which will allow [Husband] to pay the student loans directly to USA Group Loan Services, Inc. [Husband] agrees to pay the loans in the full monthly amount and by the due dates as stated in the terms of [Wife's] student loan contracts. [Husband] has the option of paying more than a monthly minimum although he is not required to do so.

5. [Husband] waives any objection to [Wife's] intent to move to California with their minor children.

6. Each party is to pay his or her own attorney fees and costs.

7. All other terms and conditions of the Decree of Marital Dissolution and subsequent orders of this Court in this cause not herein affected remain in full force and effect.

(*Id.* at 27–28.)

On February 29, 2004, the State completed an "Affidavit of Support Arrearages" that provided:

Comes now the Title IV–D Prosecuting Attorney or Enforcement Agent and being first duly sworn upon his/her oath alleges and says the following:

1. That he/she is the Title IV–D Deputy Prosecuting Attorney or Enforcement Agent for Monroe County, Indiana.

2. That in his/her official capacity as the Title IV–D Deputy Prosecuting Attorney or Enforcement Agent he/she serves as custodian of the records for the Title IV–D Child Support Programs and has knowledge of the record keeping process used in all Title IV–D case[s] in Monroe County, including all entries, transactions, or declarations made in cause number 53C02–9403–CR–247 captioned Rashmi Singih [sic] Vs. Mahendra Singh.

3. That the respondent/obligor was ordered to pay child support in the amount of $350.00 per week ordered payable to the Monroe County Clerk, Blgtn, Indiana, Custodial parent pursuant to the court order dated 3–16, 1994.

4. That on the following dates the modifications were made in the respondent's/obligor's support obligation: (attach additional sheet if necessary)

1–13–97 $188.41 per week effective 11–8–95

10–31–00 arrearage order

5. That based upon the court ordered support obligation, and all modifications thereto, if any, and any and all payments made by or on behalf of the obligor as ordered by the court, the respondent/obligor is delinquent in the amount of $3,867.58, as of 2–29, 2004.

(Appellee's App. at 3.)

On April 21, 2004, the Indiana Department of Revenue sent notice to Husband that the Child Support agency had claimed his state income tax refund.

On June 7, 2004, in the Monroe Circuit Court, Husband filed a "Motion for Relief" that provided:

Comes now Petitioner, [Husband], by counsel ... who does hereby move this Court to quash or otherwise dispose of the State[']s request that [Husband's] tax refund(s) be applied towards spousal maintenance in that:

1. The State filed an Affidavit of Support Arrearages on or about February 29th, 2004 in the amount of $3867.58 based upon the Agreed Entry dated October 31st, 2000. (See attached) Said Affidavit was filed with the Indiana Department of Revenue and a Notice of Action was taken on Petitioner's 2003 Individual Tax Return, withholding $704.00. (Rescheduled hearing with the Family and Social Services Administration in Indianapolis is set for June 23, 2004.)

2. The Agreed Entry and Judgment states that [Husband] was $9929.70 in arrears.

3. [Husband] agreed to pay "the amount $100 per month beginning on or before the 1st day of each month beginning October of 2000 and continuing every month thereafter for 48 months until the sum of $4800.00 is paid in full; which payment is in par-

tial satisfaction of the debt for maintenance owed" by [Husband].

4. [Husband] agreed to pay the balance of approximately $4752.16 in student loans incurred by [Wife] by way of making monthly payments with the student loan coupon book provided by [Wife], directly to the USA Group Loan Services, Inc.

5. Notwithstanding [Husband's] compliance with the Agreed Entry the State filed its Affidavit of Support Arrearages.

6. Counsel herein has discussed this problem with Candi Haley, Affiant of the Affidavit of Support Arrearages. There appears to be a misunderstanding as to whether or not [Husband] is to make the student loan payments directly to the USA Group, or [Wife].

7. The State also joins Petitioner herein in requesting that his issue be set down for hearing.

(Appellant's App. at 30.) On July 6, 2004, the State filed a similar petition entitled "Petition to Determine Amount of Child Support Arrearage." (Appellee's App. at 8.) The State's petition provided:

Comes now the State of Indiana, by it's [sic] Deputy Prosecuting Attorney, and states as follows:

(1) [Wife] is the original respondent in the above-entitled cause.

(2) By order of the Court dated 01/13/97, the following order was entered in said Cause:

(a) [Husband] was adjudged to be $9929.70 in arrears for the support as of 10/31/00; and,

(b) That said arrearage was divided into the following ISETS accounts:

1. $ (AFDCA)
2. $ (PREAA)
3. $9929.70 (NADCA)
4. $ (BTST); and

(c) [Husband] was ordered to pay for the support and maintenance of the child(ren) in the sum of $188.41 per week, to the Clerk of Monroe County and in addition pay $100.00 per month on the arrears to said Clerk; and

(3) [Husband] was adjudged the father of the minor children; and

(4) [Wife] has custody of the minor child(ren) and has continuously had custody since entry of the order of support.

(5) The original petitioner has not paid support as ordered and is presently in arrears in the amount of $5241.29 as of 06/30/04 ($ (AFDC), $5241.29 (NADC), $ (POSA), $ (BTST)).

THEREFORE, affiant moves the Court to redocket this cause, to determine the amount of the child support arrearage owed by [Husband] and to establish a payment schedule for said arrearage and for all other proper relief.

(*Id.*)

On October 29, 2004, the trial court entered the following order:

### FINDINGS

1. [Husband] and [Wife] were divorced on November 8, 1995.

2. On October 31, 2000, [Husband] and Wife tendered an Agreed Entry and Judgment (Agreement) to this court which was intended to resolve all outstanding financial issues.

3. This court approved said Agreement by ordering the same on October 31, 2000, and the Agreement is a valid, negotiated settlement agreement between [Husband] and

Wife, and, as such, is a contract binding upon the parties.

\* \* \* \* \*

7. On July 6, 2004, the State of Indiana filed its Motion to Intervene pursuant to Indiana Trial Rule 24 by virtue of an Application for Child Support Services pursuant to Title IV–D of the Social Security Act.

8. [Husband] asserts that direct payments on Wife's educational loans referred to in paragraph 4 are to be taken together with the $100 monthly payments for a period of 48 months, and the combination of the two satisfy the $9,929.70 arrearage specified in paragraph 1.

9. The State of Indiana asserts that the plain language of paragraphs 1, 3, and 4 of the Agreement, taken as a whole, indicates that the education loan payments specified in paragraph 4 represent an obligation separate from, and in addition to, the maintenance obligation specified in paragraph 1 of the Agreement.

## CONCLUSIONS

1. Settlement agreements within the domestic relations context are routinely construed according to ordinary principles of contract law. [citation omitted].

2. In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. The contract is to be read as a whole when trying to ascertain the intent of the parties. [citation omitted].

3. The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. The court must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting. [citation omitted].

4. In the case before the court, there is no claim that the Agreement at issue is ambiguous; however, there is a controversy between [Husband] and the State with each favoring a different interpretation.

5. An ambiguity does not exist simply because a controversy exists between the parties, with each favoring a different interpretation. [citation omitted].

6. In the case at bar, the court finds that the terms of the Agreement are not ambiguous, thus the court is constrained by the language contained within the four corners of the document.

7. Generally, where no ambiguity is present the trial court is constrained by the "four corners" rule, which provides: In construing [a] written instrument, the language of the instrument, if unambiguous, determines the intent of the instrument such that parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence. [citation omitted].

8. The plain and ordinary meaning of Paragraph 1 of the Agreement indicates that the parties agree that [Husband] had financial obligations

for the following: (1) tuition and books, (2) a percentage of uninsured medical expenses; (3) the purchase of a vehicle as maintenance. As a result [Husband], at the time of the Agreement, was in arrears in the precise amount of $9929.70. There is no suggestion that the $9929.70 is an estimate, and the court cannot infer that the amount represents an estimate.

9. The plain and ordinary meaning of Paragraph 3 of the Agreement indicates the parties had arrived at a method of partially satisfying the arrearage of $9929.70, whereby [Husband] would pay through the Monroe County Clerk the amount of $100 per month to begin on or before the first day of each month beginning October of 2000 and continuing every month thereafter for forty-eight (48) months until the sum of $4,800 is paid in full. The last sentence of Paragraph 3 clearly states that the $4800 would represent *partial satisfaction of the debt for maintenance* owed by [Husband] to the Wife.

10. Paragraph 4 of the Agreement states that [Husband] is to pay for Wife's student loans as required by the Decree of Dissolution in the approximate sum of 4752.16 as of November 17, 1997.

11. Unlike Paragraph 3, which clearly makes reference to the debt for maintenance as described in Paragraph 1, Paragraph 4 does not state or suggest that the student loan payments to be made by [Husband] are designed to represent partial satisfaction of the debt for maintenance, and the court cannot make such an inference.

12. Even if the court were to assume that the $4800 described in Paragraph 3 and the $4752.16 described in Paragraph 4 are both to satisfy the debt for maintenance, the two figures added together amount to $9552.16, which amount represents a difference of $377.54 from the amount of maintenance arrearage of $9929.70 described in Paragraph 1.

13. The Petitioner's assertion that the total amount of spousal maintenance would be satisfied by the Petitioner paying $4800 pursuant to Paragraph 3 combined with his paying the approximate amount of 4752.16 pursuant to paragraph 4, would render the precise figure of spousal maintenance debt of $9929.70 as stated in Paragraph 1 meaningless.

14. The court concludes that the education loan payments described in Paragraph 4 of the Agreement represent an obligation separate from, and in addition to, the maintenance obligation specified in Paragraph 1 of the Agreement.

15. The court, therefore, DENIES, the Petitioner's Motion for Relief and sets this matter for hearing regarding the State's Petition to Establish Arrears on the 26th day of January, 2005.

(Appellant's App. at 18–21.)

## DISCUSSION AND DECISION

### 1. *Subject Matter Jurisdiction*

■ Prior to addressing Husband's arguments on the merits of the trial court's denial of his motion for relief, we must address the State's claim that the trial court did not have jurisdiction to entertain Husband's request for relief. The State asserts Husband was required to exhaust

administrative remedies available for challenging the withholding of his income tax refund. Under the specific facts of this case, we disagree.

Husband petitioned the court to resolve the "misunderstanding" between himself and the Prosecuting Attorney's office regarding the meaning of the Agreed Entry. (Appellant's App. at 30.)

Our Indiana Supreme Court recently discussed a trial court's continuing jurisdiction to clarify and enforce property settlement agreements. *See Fackler v. Powell*, 839 N.E.2d 165 (Ind.2005). Powell asserted the Allen Superior Court did not have jurisdiction over Fackler's request for clarification and enforcement of their dissolution property settlement agreement, because jurisdiction over such requests remained in the Allen Superior Court's Family Relations Division, which had entered the dissolution order. Our Supreme Court explained:

> We start our analysis with the firmly established rule that a court that issues a dissolution decree retains exclusive and continuing responsibility for any future modifications and related matters concerning the care, custody, control, and support of any minor children. Among the policy reasons supporting this rule is that deciding these matters frequently involve[s] factual determinations that substantial and continuing, changed circumstances render the existing terms unreasonable; an inquiry that the dissolution court is in the best position to conduct.
>
> We recognize that the instant case does not precisely invoke this rule; Fackler did not seek to modify a support or custody arrangement or even to modify the property settlement. Instead, Fackler petitioned the Trial Court seeking clarification and enforcement—not modification—of the property settlement

agreement. But even under these circumstances, we believe the interests of judicial efficiency and comity are best served by requiring litigants to seek clarification and enforcement of property settlement agreements in the dissolution court. Both precedent and broader policy considerations support this result.

> We have previously held in such situations that a dissolution court may exercise continuing jurisdiction to reexamine a property settlement where "the nature of which is to seek *clarification* of a prior order."
>
> The jurisdictional grant to a dissolution court is warranted as an extension of "the necessary and usual powers essential to effectuate th[e marital] dissolution, [which] include[s] the power to interpret the court's own decree." Fackler sought an interpretation of the settlement agreement to reflect her contention that Powell owed her $103,000 by its terms. Her complaint requested enforcement of the settlement according to its terms. Agreeing that the dissolution court that enters a property settlement agreement is in the best position to resolve such questions of interpretation and enforcement, we hold that dissolution courts retain jurisdiction to interpret the terms of their property settlement agreements and to enforce them.

*Id.* at 167–68 (internal citations omitted) (emphasis in original). Based on that analysis, the Court held Fackler should have brought her action for interpretation and enforcement of the settlement agreement in the dissolution court under the same cause number as the dissolution. *Id.* at 170. Therefore, the Supreme Court held, the trial court had erred by denying Powell's motion to dismiss. *Id.*

Because Husband sought clarification of the meaning of the Agreed Entry ap-

proved by the dissolution court, the dissolution court had jurisdiction to entertain his motion. *See id.* Accordingly, we address Husband's arguments regarding the trial court's interpretation of the agreed entry.

### 2. *Interpretation of Agreed Entry*

 The trial court erred in interpreting the October 31, 2000, Agreed Entry. In the dissolution of marriage context, parties are free to craft settlement agreements.[1] *Niccum v. Niccum,* 734 N.E.2d 637, 639 (Ind.Ct.App.2000). Such agreements are contractual in nature and binding on the parties. *Id.* The rules of contract construction therefore govern construction of settlement agreements. *Id.* Interpretation of the language in a contract is a question of law, which we review *de novo. Art Country Squire, L.L.C. v. Inland Mortgage Corp.,* 745 N.E.2d 885, 889 (Ind.Ct.App.2001).

 Unambiguous terms must be given their plain and ordinary meaning. *Niccum,* 734 N.E.2d at 639. If the contract is clear and unambiguous, we may not construe the contract or look at extrinsic evidence; rather, we must simply apply the contractual provisions. *Id.* Terms are not ambiguous merely because the parties disagree about the proper interpretation of the terms. *Id.* Rather, language is ambiguous only if reasonable people could come to different conclusions about its meaning. *Roy A. Miller & Sons, Inc. v. Industrial*

*Hardwoods Corp.,* 775 N.E.2d 1168, 1173 (Ind.Ct.App.2002).

The trial court concluded "the terms of the Agreement are not ambiguous ...." (Appellant's App. at 20.) Our review of the agreement reveals ambiguity regarding whether the payments required from Husband in paragraphs three and four were meant to fulfill all of his maintenance obligations to Wife that were referenced in paragraph one. Because of that ambiguity, "we must determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties." *Niccum,* 734 N.E.2d at 639.

In paragraph four of the Agreed Entry, the parties agree Husband will pay $4,752.16 in student loans directly to USA Group Loan Services and Wife will give him the coupon book to permit direct payments. Nothing in that paragraph indicates those payments are "in partial satisfaction of the debt for maintenance owed," as the parties had characterized the $4,800 in payments Husband would make to the court clerk pursuant to paragraph three. (Appellant's App. at 28.) Nevertheless, paragraph one states Husband is in arrears for "not paying for tuition and books as maintenance." (*Id.* at 27.) Accordingly, the $4,752.16 Husband agreed to pay toward student loans under paragraph four must have been intended to satisfy

---

1. Because the parties' agreement was approved by the court and "incorporated in the Decree of Marriage Dissolution," (Appellant's App. at 29), it could be considered a judgment. Nevertheless, our standard of review remains the same, because we construe judgments in the same way we construe contracts. *Tri–Professional Realty, Inc. v. Hillenburg,* 669 N.E.2d 1064, 1068 (Ind.Ct.App.1996), *trans. denied* 683 N.E.2d 583 (Ind.1997). A judgment is ambiguous if it would lead two reasonable persons to different conclusions about

its meaning and effect. *Gilbert v. Gilbert,* 777 N.E.2d 785, 790 (Ind.Ct.App.2002). If a judgment is ambiguous, we determine its meaning by examining the judgment as a whole, without isolating particular words. *Id.* at 790–91. When we construe a judgment, we "look at the entire record, including but not limited to the complaint, findings, argument, and evidence, to ascertain its meaning and effect." *Id.* at 791. "Judgments should be liberally construed as to make them serviceable and not useless." *Id.*

the maintenance arrearage for tuition and books alluded to in paragraph one.[2]

Contrary to the State's argument and the trial court's conclusions, this interpretation does not conflict with the language of paragraph one of the Agreed Entry. The parties did not stipulate in that paragraph that Husband was in fact precisely $9,929.70 in arrears. Rather, paragraph one simply restates the contents of Wife petition in which she "alleged" Husband was $9,929.70 in arrears. (*Id.* at 27.)

To the extent the money Husband agreed to pay in paragraph three and paragraph four does not precisely equal the amount Wife alleged Husband was in arrears, we believe such difference is irrelevant for determining the intent of the parties. Settlement agreements routinely involve one party giving more than he believes he owes or receiving less than he believes he is due; that is the nature of the negotiation process. Wife accepted some three hundred dollars less than she alleged she was due in her petition. In exchange, she obtained a judgment without the expense of trial and an agreement that Husband would not challenge her desire to move their children to California.

## CONCLUSION

The trial court had jurisdiction to address Husband's request for clarification of its earlier judgment adopting the parties' Agreed Entry. However, the trial court erred when it interpreted the language in that Agreed Entry to find Husband owed Wife $14,681.86. Accordingly, we reverse and remand for the trial court to deter-

mine whether Husband has satisfied his obligations to Wife under the Agreed Entry as interpreted herein and for other proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, C.J., and ROBB, J., concur.

2. We also find unpersuasive the State's argument that Husband owed Wife the $4,752.16 discussed in paragraph four in addition to the $9,929.70 discussed in paragraph one in light of the fact that paragraph explained that Wife's petition alleged Husband was "now $9929.70 in arrears on said payments all owed to wife." (Appellant's App. at 27.) One of the "said payments" explicitly referenced in that sentence was the "tuition and books as maintenance." (*Id.*) If Husband had been in arrears an additional $4752.16 for tuition and books, Wife would have presumably filed a verified petition alleging Husband was in arrears $14,681.86.