## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 18 2016, 8:38 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Andrew P. Martin
Sachs & Hess
St. John, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tammy J. Russell f/k/a Tammy J. Betancourt,<br>*Appellant-Petitioner,*<br><br>v.<br><br>John A. Betancourt,<br>*Appellee-Respondent.* | February 18, 2016<br><br>Court of Appeals Case No.<br>45A03-1507-DR-1011<br><br>Appeal from the Lake Circuit Court<br><br>The Honorable George C. Paras, Judge<br><br>The Honorable Michael A. Sarafin, Magistrate<br><br>Trial Court Cause No.<br>45C01-0206-DR-382 |

**Mathias, Judge.**

[1]    Tammy J. Russell ("Mother") appeals the order of the Lake Circuit Court denying her claim that her ex-husband John A. Betancourt ("Father") was in

arrears in his child support and in contempt of the court's child support and parenting time orders. On appeal, Mother presents three issues, which we restate as:

I. Whether the trial court erred in finding that Father did not have an arrearage for unpaid child support and uninsured medical expenses, despite the stipulation of the parties;

II. Whether the trial court erred by applying social security disability payments Mother was receiving on behalf of the parties' child to Father's child support obligation and arrearage; and

III. Whether the trial court erred by declining to award Mother attorney fees based on Father's contempt of the trial court's parenting time order.

[2] We affirm.

## Facts and Procedural History

[3] Mother and Father were married in July 1998 and had one son, D.B. ("Child"), born in October 1998. Mother and Father's marriage was dissolved on September 4, 2003. The parties' property settlement agreement was incorporated into the dissolution decree. Pursuant to this agreement, Mother was granted physical custody of Child, and Father was to pay $100 per week in child support in addition to $20 per week in arrearages from the provisional child support order.

[4] Father began to receive social security disability ("SSD") benefits in 2007 following a motorcycle accident that occurred in 2006. Sometime thereafter, Mother started to receive SSD payments on behalf of Child, whose portion of

the SSD payments totaled $209.77 per week. Other than this, however, Father only sporadically paid toward his child support arrearage.

[5] After a hearing on various motions and petitions held on October 26, 2009, the trial court entered an order that stated in relevant part:

> Cause submitted. Partial agreement is reached between the parties as follows:
>
> 1. Father is in arrears in total support, including child support and medical expenses, in the sum of Ten Thousand Two Hundred Four ($10,204.00) Dollars. Said arrearage shall accrue interest at the rate of eight (8%) percent per annum from October 26, 2009. However, Three Thousand Four Hundred Thirty-Five ($3,435.00) Dollars of said arrearage, which is the balance due and owing from the date of the Dissolution Decree on September 4, 2003, shall accrue interest at eight (8%) percent per annum from September 4, 2003.
>
> 2. Father shall pay Forty ($40.00) Dollars per week on said support arrearage, and in addition, shall pay over to mother his income tax refund for the calendar year 2009 and every year thereafter until said arrearage and interest is paid in full.
>
> 3. The parties agree that currently mother is receiving child support due to father's Social Security disability *which satisfies father's obligation for child support*.
>
> Evidence and arguments heard. The Court rules on contested issues as follows:
>
> 1. Father is found in willful violation of the Court's Order and is in contempt of Court.
>
> 2. Father, for a period of Four (4) months, shall be allowed to have parenting time with the parties' child, [D.B.], every Saturday from 10:00 a.m. until 7:00 p.m.

3.    Father shall not consume any alcoholic [sic] twenty- four (24) hours prior to parenting time or during his parenting time with the parties' child. Mother can require father to take a breathalyzer test any time she smells alcohol.

4.    Father must return the parties' child promptly at 7:00 p.m. and must take the child to any of his scheduled activities on said Saturday(s).

5.    Father shall continue to pay and reimburse mother fifty (50%) percent of the medical and daycare expenses for [Child] which are not covered by insurance, to be paid and/or reimbursed within sixty (60) days of father's receipt of said medical and daycare expenses. Interest shall accrue at the rate of eight (8%) percent thereafter if not paid.

Appellant's App. pp. 24-26 (emphasis added).

[6]    On May 30, 2014, Father picked up Child to exercise his parenting time. Although Father was supposed to return Child to Mother on June 3, 2014, Father kept Child and refused to return him to Mother. Mother filed an emergency petition for a rule to show cause why Father should not be held in contempt. Father responded with an emergency petition to modify child custody. Following a hearing on July 11, 2014, the trial court found that Father was in contempt for failing to abide by the court's child custody order and denied Father's petition to modify custody. Despite this order, the parties agreed to transfer primary physical custody of Child to Father on July 20, 2014. At that point, Father began to receive the SSD payments on behalf of Child.

[7]    At another hearing held on March 24, 2015, the parties informed the trial court that they had agreed to certain matters. Among these was that Father's

arrearage for child support and uninsured medical expenses was $21,847.44 as of July 20, 2015. The trial court then heard evidence regarding Mother having received Child's portion of the SSD payments. The trial court then questioned counsel regarding the SSD payments. Specifically, the court stated that, pursuant to the Indiana Child Support Guidelines, the SSD payment Mother was receiving was supposed to be "applied toward an outstanding arrearage after it covers the child support obligation." Tr. p. 81. Mother's counsel argued that the 2009 order effectively modified Father's child support obligation to include the entire SSD payment received by Mother. After hearing further evidence and argument, the trial court took the matter under advisement and, on April 28, 2015, entered the order finding that Father's child support obligation and arrearage had been satisfied by Mother receiving Child's portion of Father's SSD payments. The trial court also declined to award Mother attorney fees based on the trial court's previous finding that Father was in contempt of court for failing to follow the court's parenting time order. The trial court's order provides in relevant part:

> 1.     At the commencement of the Hearing, the Parties reported the following agreements, all of which are hereby accepted, adopted, and approved:
>
> * * *
>
> B.     That Father's arrearage for child support and uninsured medical expenses, including interest accrued, is set at $21,847.44, such amount including child support and interest through July 20, 2014, and uninsured medical expenses as paid by Mother

paid after July 20, 2014 and before the Hearing. The Total Agreed Arrearage was composed of the following:

|      |                                                                                    |              |
| ---- | ---------------------------------------------------------------------------------- | ------------ |
| i.   | Interest on Child Support,<br>September 4, 2003 to October 26, 2010                 | $1,683.75    |
| ii.  | Interest on Child Support,<br>October 26, 2014 to July 20, 2014                     | $ 3,419.63   |
| iii. | Principal Support Arrearage<br>as of July 20, 2014                                  | $7,458.04    |
| iv.  | Amounts owed for Medical Expenses                                                   | $9,286.04    |
|      | **TOTAL**                                                                           | **$21,847.44**[1] |

## II. Prior Orders

2.      This Court dissolved the Parties['] marriage on September 4, 2003, by entry of a Decree of Dissolution of Marriage and Marital Settlement Agreement (the "Agreed Decree").

\* \* \*

12.     On July 11, 2014, this Court held a hearing upon Mother's claims for emergency relief and set all remaining matters for a pre-trial conference. This Court entered its order upon such Hearing on July 30, 2014 (the "2014 Order"). Such order held Father in contempt for his failure to abide by the prior custody and parenting time orders that were in effect in this case as of the

---

[1] The total of these numbers is actually $21,847.46.

date of such hearing. The contempt sanction imposed upon Father was a commitment to the Lake County Jail for a term of 60 days with the opportunity to purge himself of such contempt by complying with the parenting time provisions as set forth in the 2014 Order. After such Hearing, the Parties effectuated their agreement whereby their minor child began residing with Father as of July 20, 2014, thereby obviating the provisions of the 2014 Order requiring that Father comply with the custody and parenting time provisions set forth therein.

13. The 2014 Order left Father's Motion pending and also left all contempt matters asserted by Mother against Father pending other than those already addressed therein.

14. At a Final Pre-Trial Conference held on January 28, 2015, the Court set the Hearing upon the Citation and Father's Motion.

### III. Contempt and Arrearage

15. Mother sought to hold Father in contempt for his failure to comport with the provisions of the 2011 Order requiring that Father pay the amount of $40.00 towards the arrearage set forth therein and for failure to pay his share of uninsured medical costs for the Parties' minor child pursuant to prior orders entered by this Court. The relief sought by Mother included a request that Father be held in contempt; that a judgment be entered against him bearing interest at 1.5% per month; and, that Father be ordered to pay Mother's attorney fees.

16. *The evidence demonstrated that despite the Parties' stipulation as to amounts that Father owed to Mother for past due support, interest, and unpaid uninsured healthcare expenses, the Parties[] failed to fully account for and the evidence demonstrated indirect payments made by Father to Mother through the child's portion of Father's Social Security Disability benefit received by Mother.* ***Such payments must be***

*considered in determining what amounts, if any, Father actually owes and whether the alleged failures by him to comply with prior orders were contemptuous.*

17.     The evidence demonstrated that Father suffered a motorcycle accident in 2006; applied for SSD benefits; and, was awarded SSD benefits in 2007. *The terms of the 2011 Order clearly state that as of the hearing held on October 26, 2009, Mother was in fact receiving the child's portion of Father's SSD benefit as the custodial parent.*

18.     From at least October 26, 2009, Mother was receiving the child's portion of Father's SSD benefit. Mother stopped receiving such benefit in September 2014. *Thus, the evidence demonstrated that Mother received the child's portion of Father's SSD benefit for at least 252 weeks (October 26, 2009 through August 31, 2014).*

19.     In September 2014, with the child then residing with Father, the child's portion of Father's SSD benefit started to be paid to Father.

20.     Mother acknowledged her receipt of the child's portion of Father's SSD benefits and testified, in relation to her income for child support purposes, that she had been out of work, as of the Hearing, for approximately 3 years and that her only source of income during such time was the child's portion of Father's SSD benefit that she was receiving through September 2014.

21.     The evidence demonstrated that the child's portion of Father's SSD benefit was and is $209.77 per week.

*22.     Father's weekly child support obligation was set at $100.00 per week by the Agreed Decree;* **such amount was not altered after its entry**.

23.     Child Support Guideline 3.G.5.a addresses the impact of SSD benefits upon current support obligations and provides that any portion of the SSD benefit that exceeds a child support obligation *shall* be considered a gratuity for the benefit of the child unless there is an arrearage.

24.     Child Support Guideline 3.G.5.b addresses the impact of SSD benefits upon a child support arrearage and provides that the amount of the benefit which exceeds the child support order may be treated as an ongoing credit toward an existing arrearage. *The commentary to Child Support Guideline 3 provides that such guidelines direct[] that any excess SSD benefit shall be applied as payment toward an existing arrearage and that once the arrearage is satisfied, any portion of the SSD benefit that exceeds the current support obligation is considered a gratuity.*

25.     The Child Support Rules and Guidelines must be employed in all determinations of child support, including arrearage determinations. The Child Support Rules and Guidelines are subject to periodic review and revision by the Indiana Supreme Court and the failure of parties to specifically incorporate the Child Support Rules and Guidelines as they exist upon the entry of a child support agreement does not prevent the application of the current version of the Child Support Rules and Guidelines. *See e.g. Schwartz v. Heeter*, 994 N.E.2d 1102 (Ind. 2013).

26.     Father's testimony as to the reasons why he had not made payments towards the support and healthcare expense arrearage is consistent with the terms of the Child Support Guidelines calling for the application of the child's portion of Father's SSD benefit.

27.     *The child's portion of Father's SSD benefit that Mother received from at least October 26, 2009 through August 31, 2014, exceeded*

*Father's current weekly support obligation by $109.00 per week. **Such amount, over the number of weeks that Mother received the same, was more than sufficient to satisfy Father's child support and child support and healthcare expense arrearage, as established in the 2011 Order, and any further child support, and child support and healthcare expense arrearage that Father accrued after the 2011 Order and prior to the Hearing.***

28.     Father is not in contempt of this Court for failure to comply with this Court's prior orders upon child support and healthcare expenses or upon any arrearage upon child support and/or healthcare expenses for the child. The Citation is DISMISSED and DISCHARGED.

29.     Based on the evidence before the Court, by and through the payment of the child's portion of Father's SSD benefit to Mother between at least October 26, 2009, and August 31, 2014, Father paid all arrearages owed by him that accrued pursuant to all prior orders entered in this case and Father's total arrearage for child support and uninsured medical expenses is set at $0.00.

### IV. Child Support

30.     As the Parties have agreed to the modification of physical custody of their minor child with Father now vested with physical custody, Mother shall pay child support to Father.

31.     Father's gross income for child support purposes includes (1) his SSD benefit, (2) the child's portion of Father's SSD benefit, and (3) income from Fathers pension.

32.     Father's gross weekly income for child support purposes is set at $1,163.00.

33. Mother was not employed as of the Hearing. The evidence demonstrated that the last time Mother worked was approximately three (3) years before the Hearing; that Mother is a journeyman union carpenter; that Mother is capable of earning $30.00 to $35.00 per hour as a union carpenter; and that she is on a list of union members seeking employment through her union hall. The evidence further demonstrated that Mother received and utilized the child's portion of Father's SSD benefit while she has been unemployed and that, while she claimed a total lack of income, that she incurs monthly mortgage, rent or housing costs, with her current spouse, of $1,636.00.

34. Mother is voluntarily underemployed or unemployed such that the imputation of income to her for child support purposes is equitable, just, and reasonable. Mother is physically capable of working and is able to meet her reported housing costs and is fully capable of earning at least federal minimum wage and funds sufficient to pay for her monthly housing costs. Accordingly, Mother's weekly gross income for child support purposes is set at $500.00.

35. While the Parties agreed to Mother having parenting time consistent with the Indiana Parenting Time Guidelines, the evidence demonstrated that Mother and the Parties' child have experienced a tumultuous relationship since Father's Motion has been pending; that Mother has had little contact via phone or otherwise with the Parties' minor child since July 2014; and, that Mother has not exercised any parenting time with the Parties' minor child since July 2014.

36. Mother is allocated an overnight parenting time credit based on 0-51 overnights.

37. There was no evidence of any further support costs, credits, or offsets for either Party.

38.    As set forth upon the attached child support obligation worksheet, Mother's child support obligation is set at $69.00 per week, effective as of July 20, 2014, the date the Parties' child commenced residing with Father by the Parties' agreement.

39.    Mother's child support arrearage, as of the entry of this Order, is set at $2,760.00, based on the passage of 40 weeks between July 20, 2014, and the date of the entry of this Order.

40.    To service her child support arrearage, Mother shall pay the additional amount of $11.00 per week until her child support arrearage is paid in full.

41.    Mother's total weekly child support obligation is hereby set at **$80.00 per week**, such amount comprised of Mother's weekly support obligation of $69.00 per week plus the arrearage payment of $11.00 per week.

42.    Mother shall make all child support payments required by this Order via Income Withholding Order when employed or through the Clerk of this Court.

43.    Father shall pay the first $714.48 in uninsured healthcare expenses for the Parties' minor child annually. Thereafter, and also annually, Father shall pay 69.93% and Mother shall pay 30.07% of such costs.

* * *

46.    All terms of all prior orders entered in this case that are not modified by this Order remain in full force and effect.

# V. Attorney Fees

47.     Each Party incurred substantial attorney fees in connection with the matters before the Court at the Hearing and that were addressed in and by the 2014 Order. Mother sought an award of attorney fees in the amount of $7,251.75, and requested that Father be ordered to pay all of her fees. Father demonstrated that he had incurred attorney fees in the total amount of $6,915.00, in connection with the matters before the Court at the Hearing and that were addressed in and by the 2014 Order. Father requested that each Party pay his or her own attorney fees.

48.     I.C. 31-15-10-1 applies to the award of attorney fees in dissolution of marriage proceedings. The intent of I.C. 31-15-10-1 is to provide access to an attorney to a party in a dissolution proceeding who would not otherwise be able to afford one. *Maxwell v. Maxwell*, 850 N.E.2d 969, 975 (Ind. Ct. App. 2006).

49.     An award of attorney fees and costs in a dissolution case is committed to the sound discretion of a court. In exercising its discretion to award fees and costs, a trial court must look to several factors including: the resources of the parties; their economic condition; the ability of the parties to engage in gainful employment and to earn adequate income; and, other factors that bear on the reasonableness of the award including: the size of the marital estate; the length of time associated with this case; the complexity or lack thereof of the matters before the court; the resources of both Parties; the result obtained or division ordered; and, conduct that resulted in additional litigation expenses. *Hartley v. Hartley*, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007).

50. A trial court possesses personal expertise that he or she may use when determining reasonable attorney fees in a marriage dissolution proceeding and has wide discretion to apportion the

fees. *Mitchell v. Mitchell*, 875 N.E.2d 320, 325 (Ind. Ct. App. 2007).

51. While income disparity may be considered in awarding fees, a court is not required to award fees based on such disparity alone. *Russell v. Russell*, 693 N.E.2d 980, 984 (Ind. Ct. App. 1998).

52. Mother sought an award of fees based on Father's alleged contempt of this Court, both as held and ordered in the 2014 Order and as she alleged at the Hearing. However, the Parties[] ultimately, through their own agreements, obviated the terms of the 2014 Order providing a parenting time schedule that Father was to follow so as to purge himself of the contempt order set forth therein. Moreover, the evidence at the Hearing did not support or establish Mother's further claims of contempt upon Father's child support and healthcare expense obligations. Each Party had access to an attorney while the post-decree matters addressed at the Hearing were pending; the issues presented were not novel or complex; and the Parties exhibited an acrimonious attitude towards each other at the Hearing that contributed to the level of fees that each incurred.

53. The Court having considered the factors it must consider in exercising its broad discretion to award attorney fees in dissolution cases finds and orders that each Party should pay his or her own attorney fees incurred by each of them [for this hearing]. Father alone shall be responsible for all fees and costs charged to him by his attorney[,] and Mother alone shall be responsible for all fees and costs charged to her by her attorney.

Appellant's App. pp. 17-23 (emphases added) (footnote omitted).

Mother filed a motion to correct error on May 27, 2015, which the trial court denied on June 26, 2015. This appeal ensued.

## Standard of Review

Indiana places a strong emphasis on the discretion of our trial courts in determining issues involving child support. *Sexton v. Sexton*, 970 N.E.2d 707, 710 (Ind. Ct. App. 2012). On appeal, we will not set aside a trial court's decision unless it is clearly erroneous. *Id*. As always, we do not reweigh evidence or judge witness credibility on appeal. *Id*. Instead, we consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. *Id*. Although we defer to a trial court's ability to find the facts, we do not defer to conclusions of law. *Id*.

We also note that Father has filed no appellee's brief. In such a situation, we will not undertake the burden of developing the appellee's arguments. *Jenkins v. Jenkins*, 17 N.E.3d 350, 351 (Ind. Ct. App. 2014). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. *Id*. at 351-52. Prima facie error is "error at first sight, on first appearance, or on the face of it." *Id*. at 352. Still, we are obligated to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Id*.

## I. Stipulation of the Parties

Mother first argues that the trial court erred by concluding that Father did not actually owe her any money despite the fact that the parties had stipulated that

Father was in arrears in his child support and uninsured medical expenses. Mother argues that the parties entered into a settlement agreement which the trial court improperly "rewrote." We disagree.

[12] To be sure, Mother is correct in noting that "[i]n the dissolution of marriage context, parties are free to craft settlement agreements." *Singh v. Singh*, 844 N.E.2d 516, 524 (Ind. Ct. App. 2006). Such settlement agreements are contractual in nature and binding on the parties. *Id*.

[13] Here, however, the parties did not enter into a settlement agreement. Mother submitted evidence and argued that Father was in arrears in the amount of $21,847.44. *See* Tr. p. 5-6; Ex. Vol., Petitioner's Ex. 1. When asked if he agreed "to this number," Father's counsel stated, "Yes." Tr. p. 6. This was based on the fact that Father had not been directly paying money to Mother for his child support obligation or arrearage for support and uninsured medical expenses.

[14] However, the trial court also heard evidence that Mother had been receiving Child's portion of Father's SSD payments. The trial court correctly observed that, pursuant to the Indiana Child Support Guidelines, such payments must be credited towards a child support obligation and, if there is any excess, may be applied to any support arrearage. Specifically, Guideline 3(G)(5) provides:

> **5.    *Effect of Social Security Benefits.***
>
>   a.    *Current Support Obligation*
>
> * * *

2.      Noncustodial parent:  Social Security benefits received by
a custodial parent, as representative payee of the child, based
upon the earnings or disability of the noncustodial parent shall be
considered as a credit to satisfy the noncustodial parent's child
support obligation as follows:

* * *

ii.      Social Security Disability benefits shall be included
in the Weekly Gross Income of the noncustodial parent
and applied as a credit to the noncustodial parent's current
child support obligation. The credit is automatic.

iii.      Any portion of the benefit that exceeds the child
support obligation shall be considered a gratuity for the
benefit of the child(ren), unless there is an arrearage.

* * *

b.      *Arrearages*

* * *

2.      Application of current Social Security Disability benefits.
The amount of the benefit which exceeds the child support order
may be treated as an ongoing credit toward an existing arrearage.

Ind. Child Support Guideline 3(G)(5) (emphases added).

[15]    Pursuant to Guideline 3(5), Mother's receipt of the Child's portion of Father's

SSD benefits "***shall*** be considered as a credit to satisfy the noncustodial parent's

child support obligation[.]" *Id*. at 3(G)(5)(a)(2). *See Jenkins*, 17 N.E.3d at 352

(noting that use of the word "shall" generally connotes mandatory import). Further, this "[c]redit is automatic." Ind. Child Support Guideline 3(G)(5)(a)(2)(ii). Thus, despite the parties' agreement as to the amount of Father's arrearage, the trial court applied the existing law to the facts of the case before it. *See also* Commentary to Guideline 3(G) ("[T]he payment received for the benefit of the child should be applied to satisfy the disabled parent's support obligation. . . . Any portion of the SSD benefit in excess of the current support obligation is a gratuity, unless there is an arrearage.").

[16] What the trial court did was not improper. Although the parties may stipulate to certain facts, they may not stipulate to questions of law. *See Pond v. McNellis*, 845 N.E.2d 1043, 1055 (Ind. Ct. App. 2006) (noting that questions of law are beyond the power of agreement by the attorneys or parties, and any agreement purporting to stipulate to a question of law is a nullity) (quoting *Price v. Freeland*, 832 N.E.2d 1036, 1043 (Ind. Ct. App. 2005)); *see also Clark v. Madden*, 725 N.E.2d 100, 107 (Ind. Ct. App. 2000) (noting that child support orders must be made in compliance with the Indiana Child Support Guidelines).

[17] Thus, although the trial court duly noted the parties' "stipulation" regarding Father's arrearage, this stipulation was itself based on an improper understanding of the effect of Mother having received Child's portion of Father's SSD benefits. When the trial court heard evidence regarding the facts surrounding this stipulation, it applied the applicable law to these facts. This was not improper.

## II. Application of SSD Benefits

[18] Mother also claims that the trial court erred in applying the amount she received in SSD benefits on behalf of Child to Father's support arrearage. Specifically, she claims that the trial court's October 2009 order increased Father's support amount to be equal to the amount of the SSD benefits Mother was receiving. Mother refers to the following portion of the October 2009 order:

> 3. The parties agree that currently mother is receiving child support due to father's Social Security disability *which satisfies father's obligation for child support*.

Appellant's App. p. 25 (emphasis added).

[19] Mother reads this to mean that Father's child support was increased to include the entirety of the SSD benefit Mother was receiving on behalf of Child. We disagree. A plain reading of this provision indicates that the trial court simply noted that the SSD payments received by Mother on behalf of Child "satisfie[d] father's obligation for child support." This was true; Mother received over $200 per week in SSD benefits on behalf of Child, whereas Father's support obligation was only $100 per week. The trial court's October 2009 order simply noted this fact. The court's 2009 order contains no other language that would suggest Father's support obligation was increased to be equal to the amount of the SSD payments.

[20] Indeed, the trial court's 2015 order specifically noted that Father's $100 per week child support obligation had *not* been increased thereafter. Mother

received $209.77 per week on behalf of Child from Father's SSD benefits. These SSD benefits received by Mother were *automatically* credited to Father's child support obligation by operation of Child Support Guideline 3(G)(5)(a)(2). Any portion of the SSD benefit payment that exceeds the child support obligation shall be considered a gratuity for the benefit of the child, "*unless there is an arrearage.*" *Id*. at 3(G)(5)(a)(2)(iii).

[21] If an arrearage exists, "[t]he amount of the benefit which exceeds the child support order *may* be treated as an ongoing credit toward an existing arrearage." *Id*. at 3(G)(5)(b)(2). The use of the word "may" indicates this is discretionary. *See Jenkins*, 17 N.E.3d at 352. Given the facts and circumstances of this case, we cannot say that the trial court abused its discretion in applying the excess toward Father's arrearage.

[22] The $209 per week in SSD benefits Mother received on Child's behalf exceeded Father's $100 per week child support obligation by $109. Thus, Mother was receiving over double the amount of Father's child support obligation. We therefore decline to hold that the trial court erred in applying the $109 excess to Father's arrearage for child support and uninsured medical expenses. This is especially true given that Father appears to be dependent upon his own SSD benefits and pension for his own support. The trial court could reasonably conclude that requiring Father to pay even more money, though $209.77 per week of his SSD benefits were already going toward the support of Child, would be unjust under the circumstances.

Thus, despite the fact that the parties stipulated that Father was in arrears in his payment of child support and uninsured medical expenses, the trial court properly applied the law to the facts before it and determined that the SSD benefits applied automatically to satisfy Father's child support obligation and the excess applied to satisfy his arrearage.

## III. Contempt

Mother also claims that the trial court erred in failing to order Father to pay Mother's attorney fees to compensate her for the injuries caused by Father's contempt. To the extent that Mother claims that Father was in contempt for failing to pay his child support and arrearage, we have already determined that the trial court properly found that the child's portion of Father's SSD benefits received by Mother satisfied both Father's child support obligation and his arrearage.[2]

Mother notes, however, that Father had already been found in contempt in the trial court's 2014 order for failing to abide by the court's parenting time order.

---

[2] Mother takes issue with Paragraph 26 of the trial court's April 28, 2015 order, which provides that Father's testimony regarding why he had not made payments toward his child support and arrearage was "consistent with the terms of the Child Support Guidelines calling for the application of the child's portion of Father's SSD benefit." Appellant's App. p. 20. Mother notes that Father testified that he did not pay his support because of "stubbornness." *See* Tr. p. 31-32. However, Father later testified, "I was misrepresented . . . and misinformed . . . and I found out later, and I thought my social security was supposed to take care of a lot of it, so basically it was my fault." Tr. p. 33. The trial court, as the trier of fact, was well within its discretion to consider the totality of Father's testimony and conclude that Father's failure to pay on his child support was due not only to his "stubbornness," but also his correct belief that his SSD payments were supposed to be credited toward his child support obligation.

The trial court, however, deferred Mother's request for attorney fees "until final resolution of this matter." Appellant's App. p. 28.

[26] In the 2015 order under appeal, the trial court addressed this issue specifically and concluded:

> 52. Mother sought an award of fees based on Father's alleged contempt of this Court, both as held and ordered in the 2014 Order and as she alleged at the Hearing. However, the Parties[] ultimately, through their own agreements, obviated the terms of the 2014 Order providing a parenting time schedule that Father was to follow so as to purge himself of the contempt order set forth therein. Moreover, the evidence at the Hearing did not support or establish Mother's further claims of contempt upon Father's child support and healthcare expense obligations. Each Party had access to an attorney while the post-decree matters addressed at the Hearing were pending; the issues presented were not novel or complex; and the Parties exhibited an acrimonious attitude towards each other at the Hearing that contributed to the level of fees that each incurred.

> 53. The Court having considered the factors it must consider in exercising its broad discretion to award attorney fees in dissolution cases finds and orders that each Party should pay his or her own attorney fees incurred by each of them [for this hearing]. Father alone shall be responsible for all fees and costs charged to him by his attorney[,] and Mother alone shall be responsible for all fees and costs charged to her by her attorney.

Appellant's App. p. 23.

[27] As Mother acknowledges on appeal, issues regarding contempt are entrusted to the sound discretion of the trial court. *Phillips v. Delks*, 880 N.E.2d 713, 718-20

(Ind. Ct. App. 2008) (noting that contempt determinations are left to the trial court's discretion and that, once a party has been found in contempt, monetary damages *may* be awarded to the other party for injuries incurred as a result of the contempt). The trial court was well aware of the facts and circumstances of this case and the parties' behavior during this case. The court clearly considered these facts and circumstances and declined to award Mother attorney fees. We cannot say that this is contrary to the clear effect of the facts and circumstances before the court.

## Conclusion

[28] The trial court did not err by ignoring the "stipulation" of the parties. The trial court simply applied the controlling law to the facts of the case before it, which was not improper. Also, the trial court did not err in applying the SSD payments received by Mother on behalf of Child to satisfy Father's child support obligation; indeed, such is required by the Indiana Child Support Guidelines. Nor did the court abuse its discretion in applying the excess from the SSD payments to satisfy Father's arrearage, which is clearly allowed by the Child Support Guidelines. Lastly, the trial court did not abuse its discretion by failing to award Mother attorney fees due to Father's earlier contempt.

[29] Affirmed.

Kirsch, J., and Brown, J., concur.