FILED

Jan 30 2019, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Robert E. Shive
Paul R. Sadler
Emswiller, Williams, Noland &
Clarke, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Charles P. Rice
Murphy Rice, LLP
South Bend, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Walker and Patricia Walker, *Appellants-Petitioners,* <br><br> v. <br><br> Megan (Buckner) Knight, *Appellee-Respondent* <br><br> ——————————— <br><br> Robert Walker and Patricia Walker, *Appellants-Petitioners,* <br><br> v. <br><br> Ashley Erin Carpenter, *Appellee-Respondent* | January 30, 2019 <br><br> Court of Appeals Case No. 18A-MI-1768 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable Steven R. Nation, Judge <br><br> Trial Court Cause Nos. 29D01-1703-MI-2800 29D01-1703-MI-2801 |

**Baker, Judge.**

[1] Robert Walker and Patricia Walker (the Walkers) appeal the trial court's orders granting summary judgment in favor of Megan Knight and Ashley Carpenter (the Mothers) on the Walkers' petitions for grandparent visitation, arguing that: (1) the Mothers should be equitably estopped from arguing that the Walkers lack standing; and (2) the Walkers preserved their rights to grandparent visitation by timely filing the petitions. Finding that the Walkers preserved their right to a hearing, we reverse and remand for further proceedings.

# Facts

[2] The Walkers had one son, Braden Walker, who is now deceased. Braden had a child, C.W., with Knight. Braden had another child, J.W., with Carpenter. Both C.W. and J.W. were born out of wedlock, but Braden established legal paternity for each child during his lifetime. The Mothers have each gotten married, and their respective husbands each filed a petition for step-parent adoption after Braden's death.[1]

[3] On March 22, 2017, the Walkers filed petitions for grandparent visitation for both C.W. and J.W. under two separate causes. Under the Grandparents Visitation Act (GVA),[2] grandparents may seek continuing visitation after the

---

[1] Knight's husband sought to adopt C.W., and Carpenter's husband sought to adopt J.W.

[2] *See* Ind. Code ch. 31-17-5.

child's parent is deceased. When the Walkers filed their petitions for visitation, the petitions for step-parent adoption of C.W. and J.W. were pending in the trial court. The Walkers and the Mothers stipulated in a written agreement that the trial court would address the issue of grandparent visitation only after the adoptions were finalized. The Mothers were also given an extension of time after the adoptions were finalized to respond to the Walkers' visitation requests. The trial court finalized J.W.'s adoption in July 2017 and C.W.'s adoption in August 2017.

[4] On January 26, 2018, Carpenter filed a motion for summary judgment, arguing that because the adoption of J.W. had been finalized, the Walkers no longer had standing to seek grandparent visitation. Carpenter also filed a motion to strike the portions of the Walkers' petitions for grandparent visitation and affidavits in which the Walkers refer to themselves as the "grandparents" of J.W. Appellants' App. Vol. II p. 45. Similarly, on April 23, 2018, Knight filed a motion for summary judgment, making the same argument as to C.W. On July 5, 2018, the trial court granted Knight's motion for summary judgment, and on July 7, 2018, the trial court granted Carpenter's motions for summary judgment and to strike.

[5] In both orders, the trial court took judicial notice of the adoption decrees proffered by the Mothers, verifying that the adoptions of C.W. and J.W. had been finalized by their respective step-fathers. Furthermore, the trial court concluded that once C.W. and J.W.'s adoptions had been finalized, the

Walkers no longer fit the definition of "grandparent."[3] Braden's death and the step-fathers' acts of adopting C.W. and J.W. severed the legal, familial relationship between the Walkers and the two children.

[6]    The trial court concluded that the Walkers did not do enough by simply filing their petitions before the adoptions were finalized. Specifically regarding J.W.'s adoption, the trial court stated, in pertinent part:

> The Walkers have never had any "Visitation rights" that could have "survive[d]" the adoption under Section 9 of the GVA. Because "no right to visitation had already been given by a court," the Walkers "have no visitation rights for section 31-17-5-9 to protect. . . ."
>
>                 ***
>
> For this reason alone, the Walkers' Petition for Grandparent Visitation fails as a matter of law.
>
>                 ***
>
> [T]he GVA was amended in part to read that a petition for grandparent visitation "must be filed prior to the date a decree of adoption is entered." Here, the petition for grandparent visitation was filed in March 2017, before the adoption decree was entered in July 2017. However, although a pre-adoption petition is a *necessary* condition for grandparent visitation, it is not the *only* condition. As discussed above, after a step-parent adoption, a court may enforce such visitation only if the petitioner (1) has "Visitation rights" that "survive the adoption of the child" under Indiana Code § 31-17-5-9 and (2) is still a "grandparent" as defined by Indiana Code § 31-9-2-77, and neither of these Indiana Code provisions was changed by the 2017 amendment. Here, the

---

[3] A maternal or paternal grandparent includes: (1) the adoptive parent of the child's parent; (2) the parent of the child's adoptive parent; and (3) the parent of the child's parent. Ind. Code § 31-9-2-77.

Walkers fail on both counts: they do not have visitation rights that survived the adoption, and they are no longer the grandparents of [J.W.]

\*\*\*

Contrary to the Walkers' argument, the Notice and Stipulation did not "waive" any claim or defense by either party. . . .

\*\*\*

Whether the Walkers are currently [J.W.'s] "grandparents" as defined under the GVA is a legal question for this Court to decide. Nevertheless, in arguing that they *were* the grandparents when their Petition for Grandparent Visitation was filed, the Walkers tried to introduce into the summary judgment record affidavits and other inadmissible evidence, which contained conclusions of law and self-serving statements to the effect that they *still are* [J.W.'s] grandparents.

\*\*\*

The Court should therefore grant Carpenter's "Motion to Strike Parts of Petitioners' Designation of Evidence."

Appellants' App. Vol. II p. 41-45 (some internal citations and quotation marks omitted) (emphases original). The Walkers now bring this consolidated appeal.

# Discussion and Decision

The Walkers claim that the trial court erred when it entered summary judgment in favor of the Mothers, arguing that: (1) the Mothers should be equitably estopped from arguing that the Walkers lack standing; and (2) the Walkers

preserved their rights to grandparent visitation by filing the petitions before the adoptions were finalized.[4]

[8] Our standard of review for a party challenging entry of partial or full summary judgment pursuant to Indiana Trial Rule 56(C) is well established:

> We review summary judgment [rulings] using the same standard as the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences are construed in favor of the non-moving party. Where the challenge to summary judgment raises questions of law, we review them de novo.

*Quirk v. Del. Cty.*, 91 N.E.3d 1008, 1013 (Ind. Ct. App. 2018) (internal citations and a footnote omitted). Moreover, "[a] trial court's grant of summary judgment is clothed with a presumption of validity[.]" *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.*, 832 N.E.2d 559, 562 (Ind. Ct. App. 2005).

# I. The Agreement

[9] The Walkers first argue that the Mothers should be equitably estopped from claiming that after the adoptions were finalized, the Walkers no longer had a

---

[4] The Walkers also argue that the trial court inappropriately took judicial notice of the children's adoption decrees. Indiana Rule of Evidence 201(a)(1)(B) states that a "court may judicially notice a fact that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Additionally, subsection (a)(2) says that a court may take judicial notice of "the existence of records of a court of this state." Both parties acknowledged that the adoptions had occurred. Indeed, the decrees were issued by the very same court. We find no error on this basis.

right to seek visitation with the children. They base this argument on the fact that the Mothers agreed to delay the visitation matter until after the adoptions were finalized. Since there is no evidence of the Mothers fraudulently inducing the Walkers into the agreement, we will analyze the nature of the agreement and whether it is enforceable. *See Town of New Chi. v. City of Lake Station ex rel. Lake Station Sanitary Dist.*, 939 N.E.2d 638, 653 (Ind. Ct. App. 2010) (holding that for the defense of equitable estoppel to be available, there must be a showing that "[o]ne who by deed or conduct has induced another to act in a particular manner . . .").

[10] We review agreements between two parties as if such agreements "are contractual in nature and binding on the parties." *City of Jeffersonville v. Envtl. Mgmt. Corp.*, 954 N.E.2d 1000, 1012 (Ind. Ct. App. 2011). "If the contract is clear and ambiguous, we may not construe the contract or look at extrinsic evidence; rather, we must simply apply the contractual provisions." *Singh v. Singh*, 844 N.E.2d 516, 524 (Ind. Ct. App. 2006). Furthermore, terms are not ambiguous simply because the parties disagree about the terms' proper interpretation. *Id.*

[11] The pertinent stipulations, to which all parties agreed, read as follows:

> 3. At this time, the above Parties believe it is in their best interests to proceed with [the grandparent visitation] action after the Adoption Matter has concluded at the trial court level.
>
> 4. Therefore [the Walkers], would agree [the Mothers] should be given a reasonable extension within which to respond to the

Petition for Grandparents Visitation after the Adoption Matter has concluded at the trial court level, and [the Walkers] shall request a hearing in due course.

5. By this stipulation, no party waives any claim or affirmative defense and the fact of entering into this stipulation will not prejudice either party.

Appellants' App. Vol. III p. 12-13. The terms of the agreement are clear and unambiguous. The Walkers agreed to let the adoptions of C.W. and J.W. conclude before they proceeded with matters regarding grandparent visitation. And the Mothers agreed to let the Walkers make their case for grandparent visitation following the adoptions. The Mothers do not contest the contents of the agreement nor do they deny that they were given more time after the children's adoptions were finalized to respond to the Walkers' petitions. It is undisputed that all parties understood and accepted the terms as written at the time the agreement was made.

[12] Even though there is no evidence of actual fraud warranting the application of equitable estoppel, the Mothers cannot preclude the Walkers from a hearing on their petitions for grandparent visitation after stipulating to the contrary. For situations as delicate and personal as negotiating family visitations, we want people to work these matters out in a similar fashion, especially if tensions are high and children are involved. Not enforcing this crucial agreement might discourage parties from doing exactly what the Walkers and the Mothers intended to do in the first place: allow themselves to privately resolve a very personal and sensitive matter in tandem with the family court system. We want

to avoid a situation in which parties enter into an agreement with the prior knowledge that the law will advantage them, disadvantage an opposing party, and ultimately render the agreement unenforceable. Accordingly, the agreement is clear, unambiguous, and binding upon the parties.

[13] Therefore, we find that the agreement between the Walkers and the Mothers is enforceable and that the agreement explicitly provided that the Walkers may proceed with, at a minimum, a hearing on the merits of their petitions for grandparent visitation. In other words, summary judgment should not have been entered for the Mothers.

## II. Grandparent Visitation Act

[14] As a final aside, we note that the Walkers argue that they preserved their rights to grandparent visitation by solely filing their petitions before the adoptions were finalized. More specifically, the Walkers claim that the act of filing the petitions alone gave them the "visitation rights" necessary to survive adoption under section nine of the GVA, which states that "[v]isitation rights . . . survive the adoption of the child by any of the following: . . . a stepparent[.]" Ind. Code § 31-17-5-9(1).

[15] We have already found that the Mothers waived their right to argue that the GVA precludes the Walkers from attaining visitation rights because they agreed to allow the Walkers to proceed on the merits after C.W. and J.W.'s adoptions were finalized. Without the agreement, however, the law seems to support the

Mothers' position regarding grandparent visitation rights. "Visitation rights" mean those which have already been established by court order before adoption. *In re Visitation of M.L.B.*, 983 N.E.2d 583, 585 (Ind. 2013) (holding that "[b]ecause the visitation order had been issued first, it survived termination of the father's rights under Indiana code section 31-17-5-9"); *Jocham v. Sutliff*, 26 N.E.3d 82, 87 (Ind. Ct. App. 2015) (holding that "[p]revious court precedent has defined the '[v]isitation rights' referenced in section 31-17-5-9 as visitation rights already exercised or established by court order . . . prior to the adoption").

[16] Nevertheless, we recognize the confusion that might arise from someone who is not aware of existing case law on the subject. To the average individual, a phrase like "visitation rights" might not indicate a requirement to obtain a court order. We encourage our General Assembly to clarify what "visitation rights" means so that, in the future, grandparents seeking visitation in the same situation understand the proper protocol.

[17] In sum, we reverse the summary judgment orders entered in favor of the Mothers and remand for further proceedings on the petitions for grandparent visitation.

[18] The judgment of the trial court is reversed and remanded for further proceedings.

May, J., and Tavitas, J., concur.